**GLADE v. WALGREEN CO. et al.**

**No. 7572.**

Circuit Court of Appeals, Seventh Circuit.

July 22, 1941.

Rehearing Denied Sept. 12, 1941.

Writ of Certiorari Denied Dec. 8, 1941.

See 62 S.Ct. 362, 86 L.Ed. ——.

C. Paul Parker and Richard Russell Wolfe, both of Chicago, Ill., for appellants.

Geo. Bayard Jones, Russell Wiles, George A. Chritton, and Chritton, Wiles, Davies & Hirschl, all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

Plaintiff-appellee charged defendants-appellants with infringement of United States patent to Martin, No. 2,115,642. Walgreen Company was charged with the sale of infringing devices, and Allied Electric Products, Inc. with both the manufacture and sale thereof. The patent was issued April 26, 1938, on an application which had been assigned to appellee shortly before it was filed August 5, 1929.

The defendants interposed the usual defenses, and also counterclaimed against the plaintiff and his father, who are operating as a partnership under the name of Glade Manufacturing Company, obtaining leave of court to join George H. Glade, Sr. as an additional party defendant. In this counterclaim it was alleged that the partnership was making and selling plugs under the Martin patent, which infringed claims 5, 8, 9, 10 and 11 of Patent No. 1,961,235, issued to McCormick on June 5, 1934, on an application filed June 20, 1927, and was assigned to the Allied Company about a month before this suit was filed. It was further alleged that the McCormick patent was an anticipation of the Martin patent, and was an interfering patent with that of Martin within the meaning of section 4918, Revised Statutes, 35 U.S.C.A. § 66. Other prior art was also relied upon by defendants.

The Martin patent relates to electric conductor terminal caps, particularly of the type used in making connections for electric utility devices, such as floor lamps, and other portable devices. The object of the alleged invention is to produce a terminal cap of few parts, simple design, and sturdy construction; one that permits the wire ends to be secured in good electrical contact with the blades without the use of solder or auxiliary mechanical devices, and further provides a substantial connection of the blades to the cap members and the conductors.

Claims 1, 5, 7, 8, 9, 10 and 11 of the Martin patent were relied upon, and the court found each was valid and infringed. It also found that none of the claims relied upon in the McCormick patent was infringed by the plaintiff's terminal cap; that

each of those claims was invalid because of anticipation by the prior art, or because of lack of invention. It further found the patents were not interfering ones under section 4918 of the Revised Statutes. The decree followed the conclusions and from it this appeal is prosecuted.

Reference to Figures 3 and 5 of Martin will more clearly explain the disclosures of the claims:

tain the blades in parallelism. The blades are made of suitable electrical conducting material, and the cap body is made of any suitable insulating material, such as semi-hard rubber, fibre, or any other substance which will lend itself readily to the construction of the device. Due to the comparative stiffness of the blades and the shoulder 4d, the blades may be formed without the prongs 4c, and driven into the

The cable D is inserted in the bore of the cap 2. The wires of the cable are then separated and spread in opposite directions and made to contact the blades 4. In assembling the blades and the cap, it is necessary that suitable tools or devices be employed for holding the blades in proper position while driving the ends 4a thereof into the cavities 2a. The notch 4b of each blade is straddled over a corresponding wire and forces it into its corresponding cavity. The dimension of the cavity 2a is such as to accommodate the thickness of the part 4a of the blade, and it causes close and sufficient contact between the blade and the wire, needing no further bond for reliably conducting the current from one to the other.

The blades 4 are notched at the edges of the part 4a, and these notches form projecting barbs so that when driven into the cavities of the cap these barbs become embedded in the material of the cap and tend to resist withdrawal thereof. The barbed ends are forced into the cavities of the cap until the bent portions 4d of the blades encounter the bottom of the grooves 2b. These grooves further act to securely re-

openings 2a, and frictionally held therein. This method is preferably suggested when the cavities 2a are formed slightly smaller than the width of the prong and wire. Thus the blades are connected to the cap and wires without the use of any auxiliary device, such as screws, rivets, or other expedients.

In discussing the claims of this patent, defendants classify them into two groups, and we shall so treat them. They classify claims 1, 5, 7 and 11 as the first group, because they make no reference to any particular form of wire attachment to the blades, and relate solely to means for mounting the blades in the plug body structures which they define. They select claim 5 as typical of this group.[1] They place claims 8, 9 and 10 in the second group because each deals with both the means for wire attachment and for blade mounting in a particularly defined form of plug body. They select claim 9 as typical of this group.[2]

Defendants first contend that the general combination, which Martin claims,

[1] "5. An electrical fitting comprising a body of non-frangible insulating material having a face and two spaced holes extending inwardly from the face, and metallic members having prongs forced into the holes, the sides of the prongs having laterally extending projections which engage the walls of the holes and resist removal."

[2] "9. In a plug construction, the combination of a plug body formed of insulating material and having a recess in the face at one end and an axial bore extending from said recess through said body, insulated conductors entering said bore at the other end of said body and extending therethrough, and a pair of substantially parallel blade members each having a pressed fit in a cavity extending inwardly from said recess near the exit

was old in the art; that he disclosed no new result or new coaction of the elements, and hence there was no invention in substituting any particular elements in that old combination. Explanatory of this, they state that Martin fell into a fatal error in failing to claim a mounting for a terminal or blade, or an attachment for a wire to such a terminal, or both, instead of trying to repatent an old combination of a plug as a whole. In this we think defendants are in error, and we think the error in this respect lies in the assumption that the general combination of Martin was old in the art, and that there was no new coaction of the elements used.

■ Defendants, however, call our attention to the fact that defendants' assumptions in these respects were admitted by plaintiff to be true. A fair interpretation of what was said in this regard we think referred to forms of attachment plugs, which were commonly on the market prior to 1927. However, it would make no difference if both parties admitted it, if in fact it was not true, for the statute does not contemplate that the court shall be bound by admissions in determining the question of patentability. Of course, analogous devices of this character have been in use for a long time, and it has been many years since any of the elements used in any of the devices before us were new in the art. This is a combination patent and of necessity it is based upon certain elements.

■ We find nothing in the statute, or in the decisions cited, which would preclude plaintiff from receiving a patent for a combination, even though it produced the same result as other such devices, if it produced that result with fewer elements that had theretofore been used or thought necessary. This is precisely what plaintiff did. Theretofore others had produced the same general result with five or more elements, whereas plaintiff produced the same general result more efficiently with three elements. It is not fair to say that Martin uses the same old elements as those before him, for there are at least two of the old elements used in prior devices which Martin does not use at all. In other words, he produces the same result in a more efficient and facile manner by making three of those old

elements accomplish the same general result as five or more had theretofore done.

In support of their contention, the defendants rely on Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S. Ct. 662, 82 L.Ed. 1008. That case held that the mere aggregation of a number of old elements which, in the aggregation, perform no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. Obviously, that patent contained all of the elements of a prior art device, while in the Martin patent there are two or more elements in every prior art case cited which are not present in Martin, and the limited number of elements in his combination do coact in an inventively new manner.

The defendants rely upon British patent to Oppenheimer, No. 24,345; United States patents to Sargent, No. 1,203,415; Thomas, No. 1,249,247; Moulthrop, No. 1,257,730; and Peterson, No. 1,279,427, as general patterns, or combinations, of the Martin plug, and they insist that those patents disclose that Martin's combination was old in the art. None of those patents contains less than seven or eight elements, and for that reason, if for none other, no one of them, if later, could be said to infringe the Martin patent.

■ As anticipatory of Martin's disclosure, defendants rely very strongly upon the British patent to Day, No. 14,306. That patent was not before the Patent Office or the Board, and on account of its dissimilarity to Martin we are unable to discern why it should have been. It discloses no central opening, no spaced cavities near one end of the central opening, no insulated conductors in a single opening, and the insulated conductors are not bent apart. Moreover, it has many more elements in the combination than does Martin. They not only differ as to details, but also as to concepts. In Day the bare end of the conductor is first securely clamped to the terminal before the terminal is positioned in the tapering opening into which it is intended to be wedged by an upward pull on the conductor. In order to clamp it, it is necessary to have a clamping member, or nut, constituting a separate part.

---

end of said bore, the ends of said conductors being bare and each end extending along the side of one of said blade members and folded around the same to engage the other side also, said folded

ends being compressed between the walls of said cavities and said blade members, to establish mechanical and electrical connection therewith."

Claim 5 successfully passed through a priority contest with Benander, No. 2,099,-555, and that decision was taken to the Board of Patent Appeals. The decision of the Board refers to count one and proposed count 25, which appear in the Martin patent as claims 4 and 5, and the decision of the Board was favorable to Martin.

Defendants further contend that the McCormick patent also anticipates all of the Martin claims. This is the patent upon which defendants seek relief in their counterclaim. Figures 1, 10, 11 and 12 of this patent will briefly disclose the points of controversy. Figure 1 shows the invention figure 1 can be said to anticipate the Martin patent. However, McCormick does disclose several variations of his patent, as illustrated by figures 10, 11 and 12, and defendants seem to rely more strongly on his disclosures represented by those figures. His only reference to these figures is as follows: "In Figs. 10 to 12 inclusive the end of the terminal is notched as at 17 and the wire is bent over the end of the terminal in engagement with this notch. The cap 18 of sheet metal or any suitable material is adapted to be arranged over the notched end of the terminal to lock the wire in place in engagement with the notch 17 and to clamp the

applied to an attachment plug which comprises an insulating base having two contact blades secured in place by rivets. The wires enter through a central bore and the bare ends of the small strands of one wire are passed through an opening (12) in each of the respective blades, and the strands are bent down against the opposite side of that blade and clamped in place by a split ring (15) of wire. This ring normally has its ends spread apart as in a V-formation, and the ends, when they are bent together to clamp the wires of the conductor, are received within the notch (14) of the blade. The ring is thus deformed and cannot be slid up or down to release the wire unless the ends are forced apart.

McCormick has at least nine elements and has not the cavities on the sides of the central core. He shows no blades having a driving fit, but he used the well-known rivets of the prior art. We are unable to perceive how the disclosure illustrated by wire in intimate contact with the opposite sides of the terminal, as illustrated in Fig. 10. At its opposite sides the terminal is notched so that it will be engaged by protrusions 20 in the cap to latch the latter in place."

There is no statement in the specification to the effect that this flattened thimble arrangement is intended to be used as a part of a terminal plug, and nothing is said as to how the base of the plug should be shaped to permit the mounting of such a terminal. Furthermore, a terminal member in figure 10 is shown as provided with a rivet to hold it flat against some object which, of course, is at variance with a mounting permitting it to project at right angles to the supporting ends, as in figure 1. Defendants at the hearing reconstructed this variation of the McCormick patent by placing it in figure 1. In doing this, however, they eliminated all rivets and added the two cavities on the side of the core which Martin dis-

closed. No such structure is referred to in any of the claims, or specification, nor is it illustrated by any of the figures, and we cannot conceive that McCormick had in mind any such structure, nor can we agree that claim 9 was intended to be used in any such manner with respect to the device of the character described in the specification.

■ With respect to claim 5 of the Martin patent, defendants contend that it does not specify a central bore in the plug body. This is quite true, but we do not understand that each claim must describe every feature set forth in the other claims and in the specification, and in construing any claim it is to be done in view of the device of the character described in the specification. Many claims are prefaced with the words, "In a device of the character described." However, we do not think that these words are necessary to the validity of any claim, and we think the pertinent statutes do not require them. It would seem that they should be assumed. The reference to the specification is not for the purpose of broadening the claims but it is only permitted for the purpose of explaining them, and to give a clear perspective of the device to which the claim is to be applied. Hence, we think claim 5 does contemplate a central bore in the plug body because it is ever present in the device described in the specification.

Both the McCormick and Martin patents were before the Department for considerable time. For a great part of that time they were there together and were before the same Examiner, and we are loathe to believe that he was in any way confused concerning their disclosures.

Claim 9, which is typical of the second group, deals with both the means of the wire attachment and for a blade mounting in a particularly defined form of plug body. We are convinced that claims 5 and 9, and all the claims which they typify, are valid, and we are of the further opinion that none of the claims relied upon by plaintiff was anticipated by the McCormick patent.

■ The District Court held that the defendants infringed the claims of the Martin patent by the manufacture and sale of what are referred to by counsel as joint exhibits A and B; plaintiff's exhibit 7-A; plaintiff's exhibit 30; and defendants' exhibit F. A comparison of these exhibits with the claims of the Martin patent convinces us that those exhibits are infringements of the claims.

■■ It is further contended by defendants that the Martin and McCormick patents are interfering patents. It seems to be well settled that patents interfere only when they claim in whole or in part, substantially the same invention. We think that the claims of these patents are not substantially identical, for the reasons hereinbefore stated, hence we think the contention is without merit. Boston Pneumatic Power Co. v. Eureka Patents Co., C.C., 139 F. 29.

■ It is also urged by defendants that the claims in the Martin patent were not the same as the claims originally filed, and that certain amendments were made in the specification while the application was pending, hence, they assert that the final claim should have been supported by supplemental oath. Supplemental oath is required only when an applicant claims some phase of the invention quite different from what was originally claimed. The original claims of the Martin patent are directed to the same general subject matter as those in the patent, and we think this contention is without merit.

■ The District Court held the claims of the McCormick patent invalid in view of the prior art. We think this ruling was correct in view of the United States patent to Doolittle, No. 208,969. That patent was not cited in the Patent Office, and we are unable to avoid the conclusion that it anticipates everything disclosed by McCormick with respect to the claims upon which he relies.

Decree affirmed.