**GLADE v. WALGREEN CO. (Allied Electric Products, Inc., Intervener).**

**No. 1031.**

District Court, N. D. Illinois, E. D.

July 14, 1942.

George Bayard Jones and Chritton, Wiles, Davies & Hirschl, all of Chicago, Ill., for plaintiff.

Foorman L. Mueller, of Chicago, Ill., for defendant Allied Electric Products, Inc.

BARNES, District Judge.

On October 17, 1939, the plaintiff, George H. Glade, Jr., filed his complaint in this court against the defendant, Walgreen Company, and therein charged infringement by the defendant of United States patent No. 2,115,642 for an electrical conductor terminal cap, issued to the plaintiff as assignee of one Earl Martin and prayed for an injunction and an accounting. The manufacturer of the devices alleged to infringe, Allied Electric Products, Inc., sought leave to intervene, and on November 28, 1939, it was joined as a defendant. A trial was had and on December 27, 1940, a decree was rendered holding the patent infringed and valid. This decree was affirmed by order of the United States Circuit Court of Appeals for the Seventh Circuit on July 22, 1941. 122 F.2d 306. On December 8, 1941, the defendants' petition for a writ of certiorari was denied by the Supreme Court of the United States. 314 U.S. 692, 62 S.Ct. 362, 86 L.Ed. ——. On December 17, 1941, the mandate of the Circuit Court of Appeals issued to this court.

On February 13, 1942, the defendants filed in the office of the clerk of the United States Circuit Court of Appeals for the Seventh Circuit a petition which they denominated a "Petition of defendant-appellants for permission to make application to the District Court for leave to file a bill of review," and in which they prayed: "Wherefore, your petitioners pray that this Honorable Court grant permission to your petitioners to make application to said District Court for leave to file such proposed Bill of Review therein, or that your petitioners may be granted such other and further relief as this Honorable Court shall deem proper in the premises, such as retaining jurisdiction of this cause and referring this to a Master to hear evidence and report to this Court."

Attached to said petition as "Exhibit A" thereto was a draft of a petition denominated "Petition for leave to file bill of review upon newly discovered matter," addressed "To the Honorable, the Judges of the United States District Court for the Northern District of Illinois, Eastern Division," and praying: "Wherefore, petitioners pray that this Honorable Court grant leave to your petitioners to file a Bill of Review against plaintiff herein for the purpose of reopening this cause for your petitioners to prove the aforesaid matters, etc."

On March 26, 1942, there was filed in the office of the clerk of this court a certified copy of an order of the United States Circuit Court of Appeals for the Seventh Circuit reading as follows: "On petition of counsel for defendants-appellants, Walgreen Co. and Allied Electric Products, Inc., "It Is Ordered by the Court that leave be, and it is hereby, granted to Walgreen Co. and Allied Electric Products, Inc., to file a bill of review in the District Court of the United States for the Northern District of Illinois, Eastern Division, in this cause, without prejudice to any action which that Court may take, upon application to it for whatever relief is there sought."

Thereafter the matter was presented to this court. This court regarded it as an application for leave to file a bill of review, heard it as such, and decided it as such, and it was not until after the court had stated that it would deny the petition for leave to file a bill of review and counsel for the plaintiff had sought to have certain items of expense by way of counsel fees charged as costs against the defendants and the court had announced that it would be compelled to disallow such items of

costs but only because it did not feel that it had power to allow them, and had stated that it would give plaintiff an opportunity to make a record as to the value of such service, that counsel for defendants presented the contention that the court did not have power to deny leave to file a bill of review, that the defendants had not asked such leave, that the Circuit Court of Appeals had granted such leave and that all this court could do was to hear the issues to be made on the bill of review. The court was of the opinion, and still is of the opinion, that the Circuit Court of Appeals by the language "Without prejudice to any action which that court may take, upon application to it for whatever relief is there sought" reserved to this court the power, if the facts required it, of denying leave to file a bill of review. If this court is in error in that regard, then its order is erroneous and everything hereinafter said may be disregarded.

The principal reliance of the defendants on their motion for leave to file a bill of review is the testimony of three witnesses (the patentee and two others) that in 1934, in an interference proceeding in the Patent Office between Martin and one Benander, they all committed perjury. It must be confessed that the possibility of being required to determine just when, if ever, three confessed perjurers told the truth moved the court to examine with perhaps more care than is usual in cases not involving perjury the defendants alleged grounds for filing a bill of review.

The allegedly newly discovered evidence (other than patents) which the defendants desire the court to consider tends, as the defendants contend, to prove (a) that the "Letters patent as issued embraces an invention other than that which he (Martin) invented and disclosed in the application for letters patent at the time he executed the same" and (b) that Martin did not invent whatever he did invent until June, 1928. The defendants say that they did not find the patentee Martin until January, 1942, a month after the United States Supreme Court denied the petition for a writ of certiorari, and that, accordingly, they did not know until January, 1942, of the perjury of Martin and that of his two witnesses. The record does not show that defendants made sufficient efforts to find Martin. The record does show that he has resided in Chicago continuously since 1927 and that a number of his former associates have known his place of residence. Particularly, the record shows that on the trial of this case the defendants made no showing of efforts to locate Martin and made no explanation of his absence. The inference is inescapable that until after the defendants had lost this case in all courts they were content to do without Martin's testimony.

But proceeding for a time on the assumption that the defendants made sufficient efforts to locate Martin and were unable to do so until January, 1942, is this testimony (for the moment assumed to be true) of the three confessed perjurers such as would bring about a different result than that heretofore reached?

It will be well to consider the defendants' first item of supposedly new matter—that the "letters patent as issued embraces an invention other than that which he invented and disclosed on the application for letters patent at the time he executed the same"—in the light of the observation of the Circuit Court of Appeals in its opinion in this case:

"It is also urged by defendants that the claims in the Martin patent were not the same as the claims originally filed, and that certain amendments were made in the specification while the application was pending, hence, they assert that the final claim should have been supported by supplemental oath. Supplemental oath is required only when an applicant claims some phase of the invention quite different from what was originally claimed. The original claims of the Martin patent are directed to the same general subject matter as those in the patent, and we think this contention is without merit." Glade v. Walgreen Co., 7 Cir., 122 F.2d 306, 311.

On the trial of this case and on appeal the defendants contended that the matters now complained of had been introduced into the specifications by amendment, which amendment was not supported by a supplemental oath. The Circuit Court of Appeals looked at the application before and after amendment and held that a supplemental oath was not required. The defendants are now claiming the supposed right of trying that same issue again. The defendants do not deny that Martin made some invention relating to an electrical conductor terminal cap, they do not deny that on or about August 5, 1929, he made oath to an application for a patent

covering his invention, they do not deny that the application as originally filed spoke the truth, but they do charge that "the letters patent as issued embraces an invention other than that which he invented and disclosed in the application for letters patent at the time he executed the same." In their petition for leave to file a bill of review, the defendants charge:

"That after the filing of said application the plaintiff herein deliberately and wrongfully introduced for the first time in said application, unknown to said inventor, new matter comprising both a description of a specific form of plug, not the invention of said Earl Martin, as well as claims specific only to this form as exemplified by claim 11 in suit."

Here is the old issue dressed up in a little different form, and the defendants now claim the right of presenting the testimony of three laymen in support of this charge. This court and the Circuit Court of Appeals held that a supplementary oath was not required, and this court now holds that the way to determine whether matter is new is to consider the application and the proposed amendment, and that it is not proper to attempt to look into the mind of the inventor by means of oral testimony. It will be well briefly to consider the amendment complained of and the application prior to the amendment. The amendment states, in substance, that the blades may be formed without the prongs 4c, sometimes referred to as "barbs," and driven into the openings, "being frictionally held therein." The claims as originally filed August 5, 1929, afford the basis for this statement. Original Claim 1 is as follows: "1. In a device of the character described having a cap body and blades, means for *frictionally securing* the blades in the body."

Original Claim 3 is as follows: "3. In a device of the character described having a cap body and blades means for inserting the blades in the body, and means on the blades to secure them against withdrawal, said latter means including barbs projecting from the blades."

These claims differ from each other, Claim 3 calling for "barbs"—a specific limitation as contrasted with Claim 1, which omits this and one other limitation. In Claim 1 the "means for frictionally securing the blades in the body" are presumably the walls of the two recesses or cavities into which the blades are forced.

In view of this disclosure in Claim 1, it was permissible to amend the descriptive part of the application to make it consistent with what was claimed.

Original Claim 6 is as follows: "6. In a device of the character described having a cap body and blades, wires leading from the blades; means for frictionally engaging the wires and the blades for holding the said blades and the said wires in position."

This claim contains more elements than Claim 1 in that it brings out that friction is responsible not only for holding the *blades* in position but also for holding the *wires* in position. The means in this instance also are the walls of the recesses into which the blades or prongs are driven.

These Claims 1 and 6 do not specifically state that the blades or prongs have no lateral projections on them, and it has been stated and not denied that negative limitations of this character are not usually permitted by the Patent Office. Said claims however are not inconsistent with a blade having no lateral projections, teeth or the like on it, nor are they inconsistent with a blade which does have lateral projections on it but which projections are frictionally held, nevertheless, by the side walls of the recess. Clearly, original Claims 1 and 6, in the light of original Claim 3, warranted the amendment complained of, and it does not set forth new matter.

We come now to the defendant's second item of supposedly new matter,— that Martin did not invent whatever he did invent until June, 1928. The defendants offer to produce the patentee Martin and his two witnesses, who will testify that when they testified in the Martin-Benander interference proceeding to earlier dates of conception and reduction to practice by Martin than June, 1928, they perjured themselves. The earliest date claimed for Benander in the interference proceeding was December, 1928, so whether these witnesses then perjured themselves or now perjure themselves makes no difference—so far as this case is concerned.

Of the patents relied on as newly discovered prior art, little need be said. They are of less relevancy than those relied upon at the trial and have no tendency to bring about a different result.

The plaintiff has made application for the allowance to him of the sum of

$2,129.85 as reimbursement for expenditures made and liability incurred in connection with this application for leave to file a bill of review. The total of such items includes $2,025 for attorney's fees and $104.85 for printing, drawings and miscellaneous expense. The court is of the opinion that these expenditures and liabilities were for items that were necessary to the defense of the application for leave to file the bill of review and that the amounts of the charges were not in excess of the usual, customary, fair and reasonable charges for like items. The court is further of the opinion that the prosecution of the application for leave to file a bill of review was unwarranted and vexatious on the part of the defendants. The court would allow the said sum of $2129.85 to the plaintiff as costs if its attention were called to authority for so doing. A rule which would allow the taxing of attorney's fees as costs in a case such as this would be a salutary one. The said sum of $2,129.85 is disallowed as costs to the plaintiff only because of lack of power to allow it.