## SWAN CARBURETOR CO. v. CHRYSLER CORPORATION.

### No. 6593.

District Court, E. D. Michigan, S. D.

April 13, 1944.

Richey & Watts, of Cleveland, Ohio, and Swan, Frye & Hardesty, of Detroit, Mich., for plaintiff.

Harness, Dickey & Pierce, of Detroit, Mich., for defendant.

LEDERLE, District Judge.

In 1934, plaintiff filed a bill of complaint in equity, charging defendant with infringement of United States Letters Patent 1,536,044 and 1,636,721 on manifolds for internal combustion engines. This court entered judgment dismissing the bill on the ground that there was no infringement. 34 F.Supp. 766. An appeal was taken to the Circuit Court of Appeals, where judgment was affirmed. 130 F.2d 391. Application for certiorari to the Supreme Court was denied. 317 U.S. 692, 63 S.Ct. 324, 87 L.Ed. 554.

Defendant has filed its bill of costs, which it noticed for hearing before the clerk of the court, with the provision in the notice that any objections with respect to the clerk's action be immediately presented to the court. This was done for the convenience of out-of-town counsel. When it was found that the parties could not agree on certain items of costs, all of these items were submitted to the court for consideration. Arguments were had, and both parties have filed briefs. One of the contested items, number 6, was withdrawn by defendant. The remaining disputed items are described in the bill of costs as follows:

9–i. Exhibit 95, items (1) to (16) inclusive; together with Exhibits 5, 6, 21, 22, 30, 30A, 50, 69C, 69D, 70C, 70D, 71C, 71D, 96 (5), 98 and 99; draftsman's charges for preparing 33 sheets of drawings and large charts showing relationships between patents in suit, prior art, and accused manifolds     $ 3,035.80

9–n. Defendant's costs of original drawings of manifolds shown in Exhibits 101A, 102A, ·111A, 111C, 112A, 112C, 121A, 121C, and 122A, 9 sheets; 144 hrs. @ $1.00 per hour     144.00

10. Cost of manufacture of manifolds tested and offered in evidence; patterns, castings and finishing; Exhibits 101, Matheson reduced manifold; 102, Fiat reduced manifold; 111, Matheson full-sized manifold; 112, Swan manifold for Matheson engine; 121, Fiat full-sized manifold; and 122, Swan manifold for Fiat engine     4,713.31

11. Cost of manufacture of split and windowed manifolds offered in evidence, splitting, machining, and finishing; Exhibits 15 (Matheson); 25 (Fiat); 54 (Swan preferred); 69 (Dodge updraft); 69A (Dodge with exhaust); 70 (Dodge-Plymouth downdraft); 70A (Dodge-Plymouth with exhaust); 71 (DeSoto downdraft); 71A (DeSoto downdraft with exhaust); 100 Standard Dodge-Plymouth); 101B (Matheson reduced); 102B (Fiat reduced); and 121W (Fiat windowed)     437.00

12. Direct costs incurred in attending plaintiff's interpartes tests at Cleveland:

(a) Dr. Brown
Travel and Maintenance     23.90
Services     300.00     323.90

(b) Mr. A. P. Brush
Travel and Maintenance     45.00
Services     225.00·     270.00

13. Direct costs incurred in meeting plaintiff's tests by defendant's interpartes tests:

(A) Road Tests
  (a) Miscellaneous disbursements for supplies, maintenance, etc., not including costs of automobiles, manifolds     545.47
  (b) Services Dr. Brown     1,500.00
  (c) Services A. P. Brush     600.00     2,645.47

(B) Dynamometer Tests
  (a) Laboratory equipment, materials, direct labor and supplies not otherwise charged     175.00
  (b) Expenses Dr. Brown     73.30
  (c) Services Dr. Brown     1,050.00
  (d) Services A. P. Brush     300.00     1,423.30

Total     $13,167.78

Defendant's bill of costs is supported by affidavit setting forth that all of the items were necessarily incurred and paid by the defendant in defense of this action. No counter-affidavit was filed by plaintiff, and, although its counsel makes the charge that some of the items are excessive, plaintiff has not pointed out the particulars in which such items are claimed to be excessive. The objection urged upon the court to all of the contested items is that "the expenditures were made for the benefit of defendant in its presentation of the case," and are therefore not properly taxable as costs in this action.

The judgment entered after the trial provided that defendant recover its costs and disbursements against plaintiff. At request of plaintiff, and without objection from defendant, this provision was amended within a few days to provide that defendant recover its costs against plaintiff, which was in accordance with the wording of the findings of fact and conclusions of law. In its brief, plaintiff says: "It is believed that any discussion of the costs to be allowed in this case should be considered in view of this judgment." As I view this controversy, the change in the language, eliminating the word "disbursements," does not affect the right of defendant to recover the disputed items. The only basis upon which these items can be recovered is that they are costs properly taxable in an action in equity. Since the judgment was not final as to the matter of costs and the imposition of costs is a matter within the discretion of the trial court, this portion of the judgment is still open to full consideration by the trial court. Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316; Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184.

Both patents in suit had been in litigation with other parties prior to trial of this case, and at a trial of the separate issue of privity and estoppel by judgment arising out of decision of a case against Reeke-Nash Company, this court entered a preliminary judgment determining that defendant here was bound by the decision made in that prior case as to validity of plaintiff's patents because both Reeke-Nash Company and this defendant were members of a manufacturers' association having a committee interested in patent litigation, and that committee undertook the defense of that action.

It appears that the total amount of costs which defendant is here seeking is large. However, the amount involved in the case was substantial and there was a lengthy trial. After preliminary trial on the separate issue of estoppel by judgment, testimony on the remaining issues was commenced on January 23, 1940. The trial was completed on June 28, 1940, and judgment was entered on July 9, 1940. If defendant recovered everything it is seeking, it would only be a portion of the total cost of defending this suit. Plaintiff was exceptionally well entrenched in its position because of the prior favorable decisions it had secured, and its attorneys and experts who had taken part in prior litigation with other parties were exceptionally well prepared to present their side of this case.

Because this court had previously held that defendant was estopped from denying the validity of the patents in suit, the sole question was that of infringement. It was plaintiff's theory that if it could establish that defendant's accused devices produced substantially the same result as the patented device, the slight changes in configuration between the two devices would be immaterial. The models referred to in items 10 and 11 were actually used in conducting the tests referred to in item 13, but they were also offered and received in evidence and were essential for an understanding of the testimony given by the experts and of the issues involved. In order to prove that the results achieved by the accused devices were the same as those produced by the patented device, elaborate tests were conducted in Cleveland. It was essential for defendant to have an expert present at these tests so that he would be qualified to testify at the trial of this case. For this purpose defendant retained engineers, Dr. G. G. Brown and Mr. A. P. Brush, and paid their fees and expenses. During the course of the trial an adjournment was taken to give defendant an opportunity to conduct tests in a laboratory and on the road. This procedure was necessary in order to demonstrate that the tests conducted by plaintiff did not disclose all of the evidence necessary to decide this issue. It was necessary to have experts supervise these tests and observe the results in order to testify at the trial and in order to get the results of these tests into the record. The expense of these tests and the fees paid the experts for their services are reasonable.

Plaintiff, in its brief, relies mainly upon the case of Henkel v. Chicago, St. P., M. & O. R. Co., 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386, and circuit and district court opinions based upon the doctrine enunciated therein. That case involved an action at law, and it is clear that that decision is not decisive of the question of allowance of costs in equity. As to the effect of Rule 54(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the question of allowance of costs in law cases, see Harris v. Twentieth Century Fox Film Corp., 2 Cir., 139 F.2d 571. If defendant is entitled to tax the disputed items, it is upon the theory that such allowance may be made by a court of equity in accordance with sound equity practice. Sprague v. Ticonic Nat. Bank, supra; Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595; 20 C.J.S., Costs, § 214, p. 449.

■ Courts have allowed costs for the preparation of drawings and charts as set forth in the disputed items 9i and 9n upon the theory that these costs are provided for in that portion of Section 830 of Title 28 of the U.S.Code, 28 U.S.C.A. § 830, which reads as follows: "Lawful fees for exemplifications and copies of papers necessarily obtained for use on trials." See Reinharts, Inc., v. Caterpillar Tractor Co., 9 Cir., 99 F. 2d 648; Appliance Inv. Co. v. Western Electric Co., 2 Cir., 61 F.2d 752. It appears, however, that it is not necessary to justify these allowances on the basis of that statute. Sprague v. Ticonic Nat. Bank, supra; Reconstruction Finance Corp. v. J. G. Menihan Corp., supra; Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919; Newton v. Consolidated Gas Co., 265 U.S. 78, 44 S.Ct. 481, 68 L.Ed. 909; Eickhoff v. Vulcan Iron Works, D.C., 2 F.R.D. 490; Barber-Coleman Co. v. Withnell, D.C., 28 F.2d 543; Raffold Process Corp. v. Castanea Paper Co., D.C., 25 F.Supp. 593.

■ Although I have been unable to find any cases in which the courts have allowed costs to be taxed for the expense of manufactured models, I see no reason why a model should be treated differently from drawings and charts. A number of courts have specifically stated that such allowances may under certain circumstances be allowed. T. H. Symington & Son v. Symington Co., D.C., 12 F.Supp. 391; Goodrich v. Ford, D.C., 55 F.Supp. 792.

■ There is no rule in this district authorizing the allowance of fees and expenses paid to an expert witness in a patent case. Likewise, there is no established practice for the allowance of such items of costs. The only precedent I have been able to find is in the case of Parker Rust Proof Co. v. Ford Motor Co., D.C., 23 F.2d 502. In that case, the plaintiff was successful in establishing infringement and was awarded a judgment for a substantial amount of damages. In addition to the damages established, Judge Tuttle allowed costs to be taxed in the amount of $98,000 against the infringing defendant, pointing out that such allowance was justified because the defendant expended in excess of $200,000 to defend that suit and caused the plaintiff to likewise incur large expenditures for tests and experiments. There would seem to be no good reason why a defendant who successfully defends a patent suit should not be treated with equal consideration. As was pointed out by Judge Simons in United States Gypsum Co. v. Consolidated Expanded Metals Cos., 6 Cir., 130 F.2d 888, certiorari denied 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558, one who resists the unfounded claims of the owner of the patent thereby confers a benefit upon the public. The vindication of the right of others similarly situated to manufacture devices similar to the accused devices should in all fairness be considered in the allowance of costs in an equity case. See Sprague v. Ticonic Nat. Bank, supra. In this way, the equity court can partially compensate the defendant for being required to go to the expense of resisting such unfounded claims.

■ I am mindful, however, of the admonition of the Supreme Court in Sprague v. Ticonic Nat. Bank, supra [307 U.S. 161, 59 S.Ct. 780, 83 L.Ed. 1184], that allowances of this type "are appropriate only in exceptional cases and for dominating reasons of justice."

■ Counsel for defendant have not called my attention to any patent case where allowances of the type represented by items 12 and 13 have been taxed, and I have been unable to find any except Parker Rust Proof v. Ford Motor Co., supra. I recognize the reasonableness of the argument of defendant's counsel for the allowance of these items of costs, and also agree with the sentiment expressed by Judge Barnes in Glade v. Walgreen Co., D.C., 46 F.Supp. 396, 400, that a rule authorizing the allowance of such items would be a salutory rule. I also recognize that defendant was put to a great expense in defending

this suit; but there is no evidence of bad faith on the part of plaintiff. Because of plaintiff's successes in prior litigation involving other defendants, it had reason to believe that it would be successful in this litigation, and it followed substantially the same procedure in prosecuting this case that it did in its prior successful litigation. Viewed as a patent case, this is not an exceptional case within the meaning of the language used by the court in Sprague v. Ticonic Nat. Bank, supra. Therefore, items 12 and 13 will have to be disallowed.

Judgment may be entered taxing costs in defendant's favor in the amount of $9,254.11, which is an allowance of all requested items with the exception of items 6, 12 and 13.