32 C.C.P.A.(Patents)

### Application of ANTHONY et al.

### Patent Appeal No. 4978.

Court of Customs and Patent Appeals.

Feb. 7, 1945.

696

Bernard A. Schroeder, of Chicago, Ill. (Chritton, Wiles, Davies, Schroeder & Merriam, of Chicago, Ill., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before ' GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office finally rejected claims 28 and 29 in appellants' application for a patent relating to a dry cell battery of the type used in flashlights. Upon appeal, the Board of Appeals, for substantially the same reasons as those assigned by the examiner, affirmed his rejection of said claims; and from the board's decision, this appeal has been taken.

Claim 20 was also rejected, but upon the ground that it was drawn to a species different from that to which the allowed claims related, and that its rejection was proper unless claims such as those at bar are allowed.

Claims 28 and 29, the latter of which is dependent upon the former, read as follows:

"28. A dry-cell comprising: an electrically nonconductive cylindrical shell having its marginal end portions turned inwardly; a metal bottom closure of less diameter than the exterior of said. shell and having its marginal portions bent to engage opposite faces and grip firmly the lower marginal end portions of the shell to form a liquid-tight joint therewith; a zinc electrode in said container making electrical contact with said bottom closure; a centrally disposed carbon electrode with depolarizing mix resting in electrolyte in the shell; and a top closure of less diameter than the exterior of said shell having an exposed metal top in contact with the carbon electrode and making a liquid-tight joint with the cylindrical shell.

"29. A dry-cell as specified in claim 28, in which the cylindrical shell is made of fibrous material impregnated with asphalt and the lower end portions of said shell are also turned upwardly and outwardly within the diameter of the shell and the marginal edge portions of the metal closure are turned downwardly and.inwardly to form an interlocking overlapping joint therewith." .

The references relied upon are:

Holst et al., 2,011,519, August 13, 1935.
Gyuris, 2,081,926, June 1, 1937.
Anthony, 2,198,423, April 23, 1940.
Anthony, 2,243,938, June 3, 1941.

Appellants' disclosure relates to the making of a leakproof battery by the use of an outer jacket of a fibrous or electrically nonconductive material, such as treated cardboard, and supplying it with liquid-tight joints between the jacket and the metal bottom and top closures of the battery.

The examiner, after allowing claims 15, 16, and 22, which he stated were specific to the ring-locking means in Fig. 1 of the application, and after setting out the disclosures of the cited references, stated:

"Claims 28 and 29 are considered unpatentable over Anthony 2,243,938. No new and unobvious results are considered accomplished by omitting the outer metal jacket D of Anthony or in providing an interlocked bottom closure as shown by Anthony 2,198,423, fig. 11. Whether the marginal portions of the shell or bottom are bent for gripping the marginal portions of the other member is considered a mere reversal of parts. Bending the marginal portions of the closure instead of the shell is further an obvious expedient as shown by Holst et al 20, 22. Claim 29, the fibre and asphalt is considered a mere selection of materials, particularly in view of Anthony's. asphalt washer 10 (2,243,938).

"Claims 28 and 29 are further considered unpatentable over Anthony 2,198,423, fig. 11. No invention is considered involved in having the bottom closure 42 grip the cylindrical sleeve 38 instead of the reverse, particularly in view of Holst et al at 20, 22. Top closure 49 has exposed metal top 50 in contact with the carbon electrode. The top closure 49 also makes a liquid-tight contact with the cylindrical shell 38. The metal jacket is not excluded by the claims and no invention would be involved in omitting it."

The board, in affirming the rejection of the examiner, stated:

"Claim 28 recites an electrically non-conductive cylindrical shell having a marginal end portion turned inwardly and a metal bottom closure of less diameter than the

exterior of said shell and having its marginal portions bent to engage opposite faces and grip firmly the lower marginal end portions of the shell to form a liquid-tight joint therewith. In Fig. 11 of the Anthony patent No. 2,198,423, the metallic bottom is bent to be engaged by a reverse bend in the outer shell of the battery to form a leakproof joint. In Anthony No. 2,243,938 the outer shell and the metallic bottom are likewise bent at their edges to be interengaged.

"It is our view that the claims 28 and 29 are not patentable over this construction. It may be said that when the outer shell is formed of a non-conducting or fibrous material it would be natural to bend the metal bottom as a flexible means to be engaged with the stiffer non-conductive material rather than bend the non-conducting material. We have noted also the inter-folded relationship of the outer shell and the top closure member of Holst in this connection."

The examiner also stated that "Claim 28 is indefinite in that 'said container', line 7, has no antecedent." In this connection we find the following in the decision of the board:

"Appellants have suggested an amendment to claim 28 by changing the word 'container' to — shell — and this is recommended."

That apparently disposed of any objection the examiner may have had to claim 28 on the ground of indefiniteness.

The Anthony patent No. 2,198,423 (Anthony being one of the inventors in the application at bar, as well as the sole inventor in the Anthony patent No. 2,243,938) discloses a jacketed dry cell wherein a zinc electrode cup is enclosed by paper insulation wound around the cup in the form of a sheet, upon which is superimposed a metal covering, the latter being the outer wall of the dry cell and being interlocked at the top and bottom by crimps inwardly disposed from the outer shell.

The Anthony patent No. 2,243,938 differs from the first Anthony patent principally in the use of an insulating washer between the metal top cap and the zinc cup, and in the fact that the insulating material between the cup and the outer metal jacket is in the form of a tube or sleeve.

The patent to Holst et al. shows an electrolytic cell or storage battery with the top cover positively interlocked with the outside container.

Gyuris shows a primary thermoelectric cell, which is enclosed by an insulating jacket and metal casing. The board made no reference to the disclosure in this patent, other than merely to cite the patent as one of those relied upon by the examiner, and, in our view of the case, it requires no consideration here.

Concededly, appellants' assignee, in manufacturing dry cells with the outer casing of metal, the strength and character of which made it readily adaptable for crimping at the bottom and top so as to prevent leakage because of the high pressure contained in or developed in the cell during operation, was confronted with the problem, during wartime, of utilizing a material other than steel for that purpose. Obviously, the use of cardboard or fibrous material involved a new consideration of how to arrange the fibrous outer jacket so as to take the place of the metal jacket and, at the same time, make it leakproof under said pressure. Appellants accomplished this purpose by eliminating the metal outer jacket and also the formerly used paper insulation between the jacket and the zinc cup. They utilized treated cardboard or other fibrous material for the outer jacket and succeeded in interlocking the jacket with the metal top and bottom closures by crimping the same in such a way that said closures gripped both the inner and outer faces of said jacket, thereby accomplishing the double purpose of insulating the zinc electrode of the battery from the flashlight casing and of affording resistance to the pressure within the battery so as to make the battery leakproof. A saving in cost of materials and a reduction in weight of the article resulted. In the battery structures disclosed by the earlier Anthony patents, the crimp was made between the outer metal jacket and the end closures in such a way that only one face of the outer jacket was gripped.

Thus it is seen that appellants not only conceived the notion of substituting a desirable and readily obtainable material for the metal outer jacket, but also, in so doing, were enabled to eliminate the inner insulation in the old art and accomplish the same purpose by so constructing their device that the metallic portions were insulated by the outer paper jacket, as before stated.

Under such circumstances it cannot be said that appellants have merely substituted one material for another. In sub-

698

stituting fibrous material for metal, they had to take into consideration the whole problem of insulation as well as retaining, in the new device, the pressure resistant and leakproof character of the old device of the earlier Anthony patents. It is true that crimping, per se, is old in the art, and that the crimping arrangement in the instant device is, in some respects, similar to that shown in the Anthony patents. But, as indicated above, some differences are present which are necessary because of the joining of fibrous material to metal rather than metal to metal with insulating material in between.

It was the view of the Patent Office tribunals that what appellants have done, outside of substituting one material for another, was suggested by the prior art and that therefore appellants' construction does not evidence invention.

With this conclusion we are constrained to disagree. It would seem to us that, in respects to which we have here given attention, appellants have greatly improved the art; that what they have done would not be obvious to the skilled mechanic; and that in the conception and production of this kind of construction, under all the circumstances stated, regardless of suggestions which might be found in some of the art cited, which, without more discussion, we regard as somewhat remote from the question involved, they have exercised the inventive faculty and are entitled to the reward of a patent. The cited art is barren of any disclosure of a gripping connection forming a liquid-tight joint between a metal base and an outside insulating or electrically non-conductive member which, at the same time, has sufficient tensile strength to withstand the high operating pressures built up within the cell.

Appellants, in their construction, have omitted an element but have not omitted its function. In other words, they have supplied the function of the omitted element by a different structure. The rule, therefore, that to omit an element and its function is not inventive, is not applicable here. But the corollary rule, that the omission of an element while retaining the function of that element may involve invention, is applicable. In re Fischer, 58 F.2d 1060, 19 C.C.P.A. (Patents) 1219; In re Deutsch, 75 F.2d 994, 22 C.C.P.A. (Patents) 1074; Glade, Jr. v. Walgreen Co., 7 Cir., 122 F.2d 306.

It is therefore our view that claims 20, 28, and 29, for the reasons stated, should have been allowed. The decision of the board, affirming that of the examiner in rejecting said claims, is reversed.

Reversed.