### PRICE–TRAWICK, Inc., v. GAS LIFT CORPORATION.

#### No. 8921.

Circuit Court of Appeals, Fifth Circuit.

Jan. 24, 1939.

Robt. E. Barry and Armand A. Cyr, both of Washington, D. C., A. Leslie Jackson, of Dallas, Tex., and Charles M. McKnight, of Tulsa, Okl., for appellant.

J. Vincent Martin, of Houston, Tex., and Prentice Wilson, of Dallas, Tex., for appellee.

Before FOSTER, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a decree dismissing appellant's bill for an injunction against infringement of Letters Patent No. 1,793,193, issued to Frederick Price. The decree sustained the validity of the patent but dismissed the bill for want of infringement. The patent is for an apparatus for starting the flow of flowing wells, and, in view of the prior art, only a part of the fifth and last claim need be considered on this appeal.

The principal use of the devices under consideration is in producing oil from wells in which the natural or rock pressure is not sufficient to cause the oil to flow to the sur-

face. Normally, an oil well consists of a large pipe, called a casing, extending from the surface of the land to the oil-bearing stratum. A flow-tube or pipe is disposed within the casing, extending to a point well below the level to which the oil rises under natural pressure. The space between the casing and the tube is sealed at the top, so that gas or air may be introduced under pressure. In shallow wells, or wells in which rock pressure brings the oil near the surface, production may be obtained by simply increasing the pressure in the casing outside the tube until the level of the oil is forced downward to the bottom of the tube. At this point, the gas begins to flow up through the oil in the tube, producing bubbles or alternate columns of air and gas, or both. The oil thus displaced rises in the tube, and, the weight not being increased, the pressure causes it to flow from the well.

Where oil is to be produced from a great depth, the pressure necessary to start and maintain the flow causes great strain upon the casing and requires large and expensive machinery. To avoid these difficulties, gas-flow valves have been developed to admit gas from the casing to the tube at predetermined pressures. These valves are spaced along the tube at intervals, and operate by closing when the differential in pressure between the casing and tube has increased due to the absence of the proper quantity of oil in the tube above the valve.

In the original Price application, claim was made for a method of flowing wells. The claims were subsequently amended to cover the valve therein specified as an apparatus. Claim 5 recites a valve stem with two convex valves disposed thereon with convexities adjacent, so disposed that a double faced concave valve seat, fixed in the walls of the tube, is interposed between them with an opening through which the valve stem passes and through which the gas flows from the casing into the tube. The claim recites means yieldingly holding the valve in position and allowing the same to wabble with relation to its seat, whereby it is allowed to assume any position necessary to seat itself under pressure.

The means, yieldingly holding the valve in place and allowing the same to wabble, are described in the specifications of the patent, and illustrated by appellant's exhibits introduced in evidence in the district court, as a flat or single leaf spring disposed outside the tube and extending parallel with the axis thereof to a point opposite the opening therein in which the valve seat is inserted, and joined to the valve stem by a flat-head screw passing through a hole in the spring and engaging the valve stem, but not being screwed into the stem a sufficient distance to bind the spring. Thus, we have a simple mathematical statement, avoiding the use of functions, that the ratio of the radius of the head of the screw to the length of the valve stem is the same as the ratio of one-half of the length of the screw from its head to the valve stem, less the thickness of the spring, to the distance the end of the valve stem may be varied from the perpendicular to the surface of the spring. Assuming values of one-fourth of an inch for the radius, one inch for the length of the valve stem, and one-sixteenth of an inch for one-half of the length of the screw from its head to the valve stem, less the thickness of the spring, we have a distance of one-fourth of an inch possible variation from the perpendicular; or, since the variation is in both or all directions, the above values allow a total movement in any plane (perpendicular to the spring and passing through the point of contact with the valve stem) of one-half of an inch or through an arc of one-half of a radian. Thus, under the assumed conditions, the wabble mentioned in the claim is a possible variation of approximately thirty degrees. If the length of the screw from head to valve stem, less thickness of the spring, is increased from one-eighth to one-fourth of an inch, the variation or wabble becomes one inch, one radian, or approximately sixty degrees.

The advantage claimed for this type of structure is that the convex faces are allowed to assume any position necessary to seat them properly in the concave faces. In the devices described, a distinction may be drawn between the function of the spring mounting of the valve and the manner in which the mounting is accomplished. The use of a flat single leaf spring satisfies the requirement of a means yieldingly holding the valve, since the spring yields to perpendicular, as well as to torsional, stresses. Wabble is the result of the loose mounting or connection between valve stem and spring, and is a true function of the limits of looseness employed, as illustrated above. The leaf spring mounting is old in the art, and the claim of infringement is confined to the arrangement permitting wabble.

Appellee's device, which it is alleged infringes the patent in suit, consists of a

valve stem with valves integral therewith, disposed within a tubular housing in which three guides are mounted so as to hold the stem in the center of the housing but permit the entire member to move along the axis thereof. The guides are positioned one at each end of the housing and one near the center. A coil spring is mounted at one end of the stem, and is so arranged that its tension is against the pressure of the gas moving through the assembly. The valves are conical enlargements of the valve stem resulting from machining, and seat simultaneously in seats accurately machined on the edges of the middle guide member and the guide member at the opposite end from the spring. The latter guide member is larger than the valve stem proper, so that the valve stem is machined with a triangular enlargement to be disposed within the member with only the points of the enlargement in contact with the member, leaving the space along the sides for the passage of the gas which has found its way through the valve opening.

The wabble complained of is that appellee allows clearances between the guide members and the portions of the valve stem in contact therewith. Appellee admits clearances of as much as .015 of an inch, but says that these clearances are necessary to allow the valve to operate; that smaller clearances would cause the stem to bind and stick in the guides. It also points out that, in its manufacture, dimensions are held within tolerances of not less than .002 of an inch, and that stricter limits would make costs prohibitive.

However this may be, we do not think that clearances of .015 of an inch in valve stems three inches long, or more, can be said to permit wabble within the meaning of the patent claim. If we undertake to consider appellee's device in the light of the mathematical analysis applied above to the Price valve, we find an entirely different disposition of elements. Instead of the movement at point of clearance, i. e., space between screw head and valve stem as in appellant's device, being multiplied by a much larger quantity, the alleged wabble of appellee's valves must always be less than the total of the clearances at each end of the valve stem, since the valves are disposed between them. The magnitude of this difference is illustrated by the values assumed and given above. Thus, in one case, wabble is one-half of an inch or thirty degrees as compared with .015 to .020 of an inch, or less than .05 of a degree.

Aside from these differences, the mode of operation of the two devices with respect to the element of wabble is essentially different. The seating movement of the valve in appellant's device requires the flexing of the flat single-leaf spring. In flexing, the end of the spring moves through an arc, so that its inclination toward the axis of the tube is at a different angle for each possible position of the valve. These differences are compensated by the loose mounting or wabble of the valve stem. Moreover, if foreign matter or corrosive material collects on the valve or valve seat, the valve is not held open around its periphery, but is allowed to close to the extent of making contact at a point opposite the foreign matter. Neither result is obtained in appellee's device. The movement of the valve is always in the same relation to the axis of the tube, subject only to the limits of clearance allowed in the guide members. The seating of the valve is prevented by the presence of foreign matter on the valve seat, since the valve member cannot change its angular relationship to the seat.

When read on appellee's device, neither claim five nor any other part of the patent teaches the construction, function, or result obtained. The only elements common to both are those which were clearly present in the prior art. There is no wabble in appellee's device which can be said to be taught by the patent in suit.

█ It has often been pointed out that the purpose of the patent law is to purchase for the public, by the grant of monopoly for a limited time, that which the patentee has developed and made available. The grant relates only to what the patent teaches, and that which does not come within the precepts of the patent is not within the monopoly. Patents extend not to related devices or methods, or such as may be deduced from them, but to that already evolved or deduced from available information and disclosed by them. Protection is limited exactly by the disclosures given in consideration therefor. It is given for what is taught. Within that field it is full and complete. Outside that field it does not exist. Considerations of similarity of methods of operation, or identity of functions or result, do not vary the applicability of this principle. However meritorious an invention may be, and however much it may contribute to the development of the art or science to which it relates, the protection afforded by a patent thereon is con-

fined to its disclosures. Paper Bag Patent Case, 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S. Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959; Coulter v. Eagle & Phenix Mills, 5 Cir., 35 F.2d 268, certiorari denied, 281 U.S. 758, 50 S.Ct. 409, 74 L.Ed. 1167; Bray v. Hofco Pump, 9 Cir., 93 F.2d 804.

Since it appears that appellee's device does not infringe, the decree of the district court is

Affirmed.