**GODFREY L. CABOT, Inc., v. J. M. HUBER CORPORATION.**

**J. M. HUBER CORPORATION v. GODFREY L. CABOT, Inc.**

**No. 9861.**

Circuit Court of Appeals, Fifth Circuit.

May 7, 1942.

Hector M. Holmes, of Boston, Mass., Wm. Jarrel Smith, of Pampa, Tex., and Joseph B. Dooley, of Amarillo, Tex., for Godfrey L. Cabot, Inc.

J. Vincent Martin, of Houston, Tex., and Walter David and John W. Beveridge, both of Borger, Tex., for J. M. Huber Corporation.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Godfrey L. Cabot, Inc., owner of patent #2,120,541 for a method of pelletizing carbon black, and #19,750 reissue for the product, sued J. M. Huber Corporation for injunction and account of profits because of infringement of claims 19–27 inclusive of the one patent and claims 5 and 6 of the other. The district court found the claims valid but not infringed, and each party appeals. The products patent refers to the method of the other patent, which was co-pending, and need not be specially discussed. These patents are spoken of as the Billings patents. Huber also owns a junior method patent #2,164,-164, referred to as the Price patent, but its validity is not directly in dispute, the question being whether the claims of the prior Billings patent are valid, and are infringed by what Huber is doing.

Carbon black is the soot from a gas flame precipitated on metal plates and scraped therefrom. As this is produced it is very light, 96 percent air and 4 percent carbon by volume. It has long been a practice to stir it by paddles in a bin so that much of the air is pressed out and the fine carbon particles agglomerated by contact with each other, and then forced into bags and further compressed. The pelletized carbon is a form in which it is in rather hard globules, making little or no dust in handling, running like coarse sand through a pipe or conveyor, easily handled in bulk, yet easily crushed for use especially in the manufacture of rubber. It has many commercial advantages and there is no question of the usefulness of the product and its recent novelty. The Billings patent claims no monopoly of pelletized carbon, but of a special method of producing it thus described in the first claim in issue: "A process of producing substantially dustless, free flowing granules of pure carbon black of sufficient density and cohesion to withstand handling in bulk without disintegration, which consists in mix-

ing a charge of flocculent carbon black of commerce with small agglomerated granules of carbon black, and then subjecting the mixture to turbulent agitation and continuing such agitation until said mixture has taken the form of relatively tenacious, self-sustaining granules." "Turbulent agitation" is prominent in each claim; as also in the disclosure, where such expressions as "impact" of the carbon particles, 'hammered surfaces", and "bombardment" of one another occur. The machine to produce the effect is not patented and several possible ones are suggested in the disclosure, but that particularly described and illustrated is a large vertical drum, with baffle plates and helical bands forming cages which revolve one within another by mechanical power (much like a mechanical egg beater) on a speed of from 27 to 45 revolutions per minute, for from one to two hours. A batch of commercial carbon black is dumped into it with some pellets as starters, and when that batch is done it is taken out, another put in and the process repeated. The machine keeps the carbon black churned up in quite violent motion, beating the particles against the side of the cylinder, the baffle plates, and the revolving helices, and of course against each other. The effect is ultimately to stick the particles together in small globules.

Huber's machine (substantially like that described in his Price patent) is a long horizontal cylinder divided into four sections, the partitions between which, as well as the two ends of the cylinder, are open at the center. The cylinder revolves slowly, five or six revolutions per minute, and the commercial carbon black is fed into the first compartment where are some heavy rollers, which roll some of the air out of the carbon, when it begins to pass through the partition into the second compartment, where the treatment is continued, and thence into the third and fourth compartments where there are no rollers, but where pellets begin to form and finally to emerge from the end of the cylinder. The process is continuous; the pellets are not so uniform and round as Cabot's, but are similar in structure and have like commercial advantages. Cabot does not claim any infringement by the rolling, but claims that what happens in the third and fourth compartments is the "turbulent agitation" of his patent, there being in Huber's machine always pellets present to make a mixture with the incoming carbon black, as stated in Billings' claims. Huber says there is no "turbulent agitation", but a gentle pouring and shifting of the contents of compartments three and four, such contents weighing several hundred pounds in his large cylinders; and that the pressure of this weight and the gentle rolling and rubbing of the particles on one another causes them to agglomerate. But the evidence shows that even with this slow rotation the contents of the cylinder are carried up the side until there is a slanting of the mass sufficient for the upper portion to fall over and "cascade" down over the other portion, thus "rolling and tumbling" over the lower portions. Whether the sum of these motions amounts to the "turbulent agitation" named in the Billings patent is the crucial question.

Cabot correctly argues that these terms in the claims are to be interpreted by their use in the disclosure, in order to understand what Billings and the patent officials meant in using them in the grant of the patent monopoly. We find among the common literal meanings these: Webster's International Dictionary: "Agitate: to move with violent irregular action"; "Turbulent: roused to violent commotion." Standard Dictionary: "Agitate: to disturb, shake irregularly; Turbulent, being in violent agitation or commotion."

These fit well with the irregular violence, "impacts" and "bombardments" mentioned by Billings, and actually caused by his fully described machine for practicing his method. We think that the phrase, both in usual speech and in the context of the patent, involves violent commotion. In the long course of this patent through the patent office this meaning became ascertained and fixed. The examiner of patents, having under consideration also the Price patent which taught a gentle motion and a gravitational pressure in his horizontal slowly revolving cylinder as a sufficient and better means of pelletizing carbon, caused an artificial issue of interference between the patents to be made up, and also investigated the prior uses in the art. He gave to Billings' "turbulent agitation" a very broad meaning, as including any irregular motion, and was for denying a patent. The Board of Patent Appeals held that agitate means to move with violent irregular action, and "turbulent agitation" means more violence than mere agitation; that there was, in that

view, no prior public use, and that Billings ought to have a patent. Thereafter the Commissioner of Patents, on the motion of Price, concurred in by Billings, dissolved the interference proceedings on the ground that the patents were so different they did not interfere, and each applicant got a patent.

We regard the Billings patent as having been obtained on this definition of what was meant by "turbulent agitation", and that he and his assignees are estopped to depart from it. In the light of what was before the Patent Office in the two patents, including the two machines described in them, it was intended that Billings should have a monopoly of method (and product) only in practicing such violent agitation as he set forth, like that produced in the machine he specially described. We do not think the "pouring" or "cascading" which occurs in Huber's commercial process, (and which must have occurred also in Price's machine), is violent enough to infringe the Billings claims.

Claims #20 and 22 speak of "turbulent agitation by rolling and tumbling" which might in a broad meaning be applied to Huber's and Price's procedure. These claims seem to have come in after the interference was dissolved, and ought not, in view of the consent decree, to be construed, at least between Billings and Price and their privies, as undoing what had been fixed as the meaning and scope of Billings' patent. It is also true that Billings, in his disclosure, speaks of the possible use of a "ball mill", which is said to be a horizontal revolving cylinder with heavy balls in it, similar to the compartments of Huber and Price with the rollers in them. But if claims #20 and 22 be attached to this disclosure, no valid patent could be claimed under them for want of a sufficient disclosure how to proceed with the ball mill. It is not disclosed whether the balls are to be taken out or left in, or how long, so that one seeking to use a ball machine would have to do his own experimenting. These claims cannot be so asserted.

The validity of the claims in issue we see no reason to doubt, with the understanding of "turbulent agitation" above explained. There is no infringement by the gentle "rolling and tumbling" and "cascading" in Huber's slow moving cylinder.

The decree appealed from is affirmed.