**KINNEAR–WEED CORPORATION,**
Appellant,

v.

**HUMBLE OIL & REFINING COMPANY,**
Appellee.

**No. 16780.**

United States Court of Appeals
Fifth Circuit.

Sept. 22, 1958.

Houston, Tex., B. D. Orgain, Beaumont, Tex., for appellee.

Before RIVES, JONES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

"Jet drilling" of oil and gas wells, broadly speaking, is the subject of this controversy presented by the appellant against the appellee in multiple claims listed as follows:

"1.  Infringement of Patent No. 2,380,112 and reissue patent thereof Reissue Patent No. 23,416;

"2.  Violation of Confidential Relationship;

"3.  Unjust Enrichment;

"4.  Unfair Competition and Unfair Trade Practices;

"5.  Violation of Monopoly or Anti-trust laws of The State of Texas and The United States."

The complaint prays for the recovery of damages in the amount of some two hundred fifty million dollars, plus an accounting for damages suffered since the filing of the complaint which appellant in brief states are "staggering in comparison to the paltry sum asked for up to 1953." The trial in the district court consumed some five weeks, followed by lengthy oral arguments, written briefs, and some eighteen months of consideration. The district court then entered full and lengthy findings of fact and conclusions of law,[1] along with judgment for the defendant. The record on appeal consists of more than 4200 pages and 275 exhibits and the briefs and arguments comprise some 800 pages. In addition, the plaintiff-appellant has pending in the District Court for the Southern District of Texas other actions for infringement of the patent in suit against Hughes Tool Company, Reed Roller Bit Company, and Hunt Tool Company. In short, this litigation is of a magnitude befitting the State of Texas. Except, however, for

William E. Kinnear, Beaumont, Tex., for appellant.

Garrett R. Tucker, Jr., Walter B. Morgan, Frank B. Pugsley, Melvin F. Fincke,

1.  Reported as Kinnear-Weed Corp. **v.** Humble Oil & Refining Co., 1956, 150 F.Supp. 143–163.

such tremendous volume, the legal principles appear not too difficult.

"Jet drilling" has come into vogue since 1948. Under a number of drilling conditions, it has proved many times faster and more efficient than ordinary rotary drilling. The terms rotary drilling and jet drilling were well described by the district court as follows:

"In rotary drilling, a bit is attached to the lower end of a string of pipe known as the 'drill stem' which is rotated by machinery located at the surface. The cutting elements on the bit cut or crush the formation into small chips. Mud laden water known as drilling fluid is pumped down through the drill stem and out through water courses in the bit onto the cutters, the formation being drilled, or both. The drilling fluid cools and lubricates the bit and also removes the chips produced by the bit, carrying them upwardly through the annular space between the drill stem and the wall of the hole, to the surface.

\*     \*     \*     \*     \*     \*

"The term 'jet drilling' as used in the industry means a technique which consists of utilizing the available horsepower on a given drilling rig in the most efficient manner by correlating properly all of the various factors affecting the rate of penetration, including (1) rate of fluid circulating through the bit, (2) fluid velocity through the bit nozzles, (3) speed of rotation of the bit, (4) amount of weight maintained on the bit, and (5) annular rising velocity." Kinnear-Weed Corp. v. Humble Oil & Refining Co., 1956, 150 F.Supp. 143, 147, 148, 150.

In accordance with a familiar law of physics,[2] the district court found that "it was discovered that the rate of penetration was greatest when the *product* of nozzle fluid velocity and rate of circulation (frequently referred to as 'QV') was at a maximum, rather than when either of these factors alone was at a maximum." 150 F.Supp. at page 151.

Appellant's patent in suit, according to its opening paragraph, "relates to new and useful improvements in a rotary drilling bit." Appellant now claims that its patent covered the original "jet bit" which made possible the development of "jet drilling." A true "jet bit" is thus described by the district court:

"The term 'jet bit' as used in the industry means a bit having the following characteristics:

"(1) water courses properly sized to give the maximum product of nozzle fluid velocity and rate of circulation for a given hydraulic system,

"(2) water courses lined with erosion resistant material so that they will retain their most efficient diameter throughout the useful life of the bit, and

"(3) water courses so positioned that the high velocity fluid issuing therefrom will not destroy or damage the cutting elements of the bit through erosion, which means, as a practical matter, that the streams of drilling fluid issuing from the water courses should not strike the cutting elements of the bit." 150 F.Supp. at page 150.

■ Appellant argues and insists on some forty-two "Points on Appeal," in the course of which it attacks all or nearly all of the ninety separate findings of fact by the district court and its twelve conclusions of law. Actually, at the conclusion of the trial, each party had, at the request of the court, submitted proposed findings of fact and conclusions of law, and the district court finally adopted those submitted by the defendant. That practice is not unusual and is entirely proper. Further, Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.

2. Under "momentum" Webster's Dictionary tells us, "Linear momentum is momentum of translation and equals the product of the mass and the velocity of the center of the mass."

C.A., has application to the effect of such findings as those of the court. Nevertheless, we must say that findings and conclusions which represent the independent judicial labors and study of the district judge are more helpful to this Court. We do not find it necessary to review each of the numerous findings and conclusions, but pass directly to a few simple propositions which we find determinative of the result of this appeal.

The original application for appellant's patent was filed by C. W. Kinnear on January 2, 1942. A number of his claims were rejected by the Patent Office. The patent issued on July 10, 1945, covered only two claims, each restricted to a particular form of roller cutter for drill bits. On January 7, 1946, Kinnear applied for a reissue of his patent on the ground that, as the result of inadvertence, accident, or mistake, the original patent did not fully set forth and claim his true invention. The Patent Office then discovered that the two claims of the original patent had been anticipated by a patent to Decker, No. 1,152,151, which had previously been overlooked, and those claims were rejected. The reasserted claims to the entire bit per se were also rejected upon two grounds: (1) lack of invention; and (2) estoppel because of the abandonment of such claims during the prosecution of the original patent. The Board of Patent Appeals ruled contrary to the primary examiner on the question of invention, but affirmed his ruling on estoppel. In an action under Revised Statutes 4915 and 4916, now embodied in 35 U.S.C.A. §§ 145, 146, 251, and 252, the United States District Court for the District of Columbia held that the applicant was not estopped to reassert his claims 5 through 14 in the application. Kinnear v. Marzall, D.C.D.C.1951, 95 F.Supp. 55.

The Patent Office then allowed those ten claims, renumbered as Claims 3 through 12, inclusive, along with eight other claims, 13 through 20, inclusive, which the applicant represented as "based on" the subject matter of the other ten claims. Reissue patent No. 23,416 was thus granted on October 16, 1951, nearly ten years after January 2, 1942, the date of the application for the original patent.

During that ten-year interval, the technique of jet drilling had been fully developed by the appellee, and explained in the publication of a series of technical papers and in two nontechnical articles. Appellant contends, however, that appellee's successful development and use of "jet drilling" came about as the result of breach of confidence and unfair competition.

Shortly prior to issue of his original patent, Kinnear had called on the leading bit manufacturers, Hughes Tool Company, Reed Roller Bit Company, and Hunt Tool Company, in unsuccessful efforts to interest them in the manufacture of his bit. He then called on Douglas Ragland, appellee's chief petroleum engineer, and showed him his patent application, notice of allowance, machine shop drawings, and explained the operation of his bit using a wooden model which has been introduced in evidence. We agree with the findings of fact by the district court that Kinnear did not furnish any confidential information to Ragland, or any information which he had not theretofore furnished to the bit manufacturers, or which could not be readily ascertained from the patent application and from the bits themselves.

The appellee company was not engaged in the manufacture of bits, but Ragland, on its behalf, did consent to test appellant's bit in its well drilling operations. Accordingly, appellee purchased in 1945 and 1946 about fifty-two of appellant's bits, and actually used about twenty-two of them in tests.

Appellant's contention that Kinnear invented "jet drilling" extends to the invention of a process, method, or technique, going far beyond the scope of his claims which are limited to "improvements in a rotary drill." We are, however, brought to the inquiry of whether Kinnear invented the original "jet bit" which made possible the development of

"jet drilling." In that inquiry, we look primarily to the disclosures in the original application for patent filed on January 2, 1942, and the history of the prosecution of that application. From such sources and from all of the evidence, we are convinced that Kinnear, like many others in the industry,[3] had recognized the importance of having the drilling fluid strike directly on the bottom of the hole, but that he did not disclose the necessity of having the water courses lined with erosion-resistant material, nor of having *all* of the water courses so positioned that the abrasive drilling mud under high pressure would not destroy or damage the cutting elements of the bit. In fact, the drawings made a part of the application disclose two ducts leading directly to the tops of the two roller cutters, and the specifications provide:

> "The smaller fluid course ducts directly blast the cutting teeth on the outer bottom roller cutters as the said teeth on the cutters rotate past the port holes of said smaller fluid course ducts during drilling operation."

Appellant emphasizes that none of the claims of the patent include these two smaller ducts. That is true, but neither do any of the claims exclude them. They are completely inconsistent with the successful operation of a "jet bit." It is elementary that claims are construed in the light of the description and to cover the real invention found in the specification and drawings.[4] So construed, these two smaller ducts are a part of the combination in which appellant's drill was expected to be used. We agree with the district court that the appellant has not infringed appellee's patent. Further, we agree with the disposition by the district court of the claims other than for patent infringement.

The district court went further, and, in line with the admonition of the Supreme Court,[5] passed on the validity of the patent, and held it invalid. That finding is not essential to the disposition of the issues in this case. The issues are so far flung and broadly drawn, that we have not satisfied ourselves as to the validity of the claims limited to the form of combination bit shown in the patent. For purposes of this case, it is enough to hold, as we do, that the claims must be so limited to a combination bit constructed substantially in accordance with the drawings and the descriptive language in the patent specification. The judgment of the district court is therefore

Affirmed.

---

3. See the patents and publications listed in the district court's finding 76, 150 F. Supp. 157.

4. See the many cases collected in 2 Walker on Patents, Sec. 261, pages 1242–1248, and in 69 C.J.S. Patents § 205.

5. Sinclair & Carroll Co., Inc., v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644.