**AIRCRAFTSMEN, INC., Plaintiff,**

v.

**AIRCRAFT EQUIPMENT COMPANY, a Florida corporation, and Richard W. Logan, Defendants.**

Civ. No. 64–627.

United States District Court
S. D. Florida.

Oct. 29, 1965.

William E. Schuyler, Jr., of Browne, Schuyler & Beveridge, Washington, D. C., and Richard A. Pallot of Pallot, Silver, Pallot & Stern, Miami, Fla., for plaintiff.

James E. Cockfield, of Burns, Doane, Benedict, Swecker & Mathis, Washington, D. C., and Thomas H. Anderson, of Anderson & Nadeau, Miami, Fla., for defendants.

MEHRTENS, District Judge.

This is a suit for infringement of United States Letters patent 2,828,166.

By Pretrial Stipulation, the plaintiff relies on Claim 1 only of this patent.

The defendant denied infringement and, through a Declaratory Judgment counterclaim, asserted invalidity of the patent.

United States patent 2,828,166 designates Matthew M. Herring as inventor and is assigned to the plaintiff, Aircraftsmen, Inc. Matthew M. Herring is the President of the plaintiff corporation.

The structure alleged to infringe the patent is an aircraft service stand manufactured by the defendant, Aircraft Equipment Company, and sold to Lockheed-Georgia Company of Marietta, Georgia pursuant to purchase order No. PJ 96868. (Plaintiff's Exhibit 7)

The trial in this matter commenced September 28, 1965.

Based on the pleadings, the pretrial stipulation, the exhibits and testimony presented during trial, and the written briefs and oral arguments of counsel, the Court makes the following findings.

## FINDINGS OF FACT

### Parties

1. The plaintiff, Aircraftsmen, Inc., is a Florida corporation whose address is 4110 Northwest 36th Avenue, Miami, Florida.

2. The defendant, Aircraft Equipment Company, is a Florida corporation whose address is 4050 Northwest 28th Street, Miami, Florida. The defendant Richard W. Logan's address is 630 Curtiss Parkway, Miami Springs, Florida, and he is a resident of the State of Florida.

### The Patent in Suit

3. The Herring patent 2,828,166 issued March 25, 1958 from application

Serial No. 531,857 filed September 1, 1955.

4. The Herring patent 2,828,166 is a narrow improvement patent in the field of scaffolding and concerns structural details embodied in a stand which may be employed to facilitate the servicing, cleaning and maintenance of aircraft. Although the plaintiff has sold thirty-eight such stands to the United States Air Force, only two stands have been sold to commercial airlines.

5. Claim 1 of Herring patent 2,828,-166 is specifically directed to a combination including a pair of catwalks, each of which is pivoted on the "outer end" of an elevating carriage for horizontal swinging movement. The trackways are in turn mounted on an upright support. Claim 1 calls for a platform mounted on each of the two carriages, with these platforms extending to a position intermediate the carriage trackways whereby a "continuous passageway" is provided between the catwalks.

### State of the Art

6. Matthew M. Herring's alleged date of invention of the subject matter of the patent in suit is in 1954 (evidenced by the testimony of the plaintiff's witnesses Matthew M. Herring and Peter Becker and paragraph 8 of page 2 of the Pretrial Stipulation). Each individual element recited in Claim 1 of the Herring patent 2,828,166 was old both as to structure and function prior to 1954 as reflected by the following tabulation of prior art presented during the trial but not cited by the Patent Office.

| Elements defined in Claim 1 of the Herring Patent | Prior patents which show elements to be old |
| --- | --- |
| an upright support structure | Support 15 in Lord patent 2,384,939 |
| a plurality of pairs of vertically disposed tracks mounted on said upright support structure | Opposite edges of each rail 41 in Lord patent 2,384,939, i. e. narrow rail faces shown in cross section in Figure 2 of this patent |
| a carriage movably mounted in each pair of said tracks, said carriages extending horizontally from said support | Two carriage structures, each including elements 38, 39, 42, 43 and 48 in Lord patent 2,384,939 |
| a plurality of elongated catwalks | Two catwalks 36 in Lord patent 2,384,939 |
| pivot means mounting one end of each of said catwalks to the outer end of said carriages | Pivots 44 disposed on outer ends 43 of carriages in Lord patent 2,384,939 |
| a platform mounted on each of said carriages, said platforms extending to a position intermediate said pairs of tracks whereby a continuous passageway is provided between said catwalks. | Mutually facing extension of platforms 16 in Mitchell patent 2,778,694 and mutually facing extensions of platforms "f" of Lanchester patent 2,430,179. |

The Lord patent was introduced as defendant's Exhibits 19A through 19C. The Mitchell patent was introduced as Defendant's Exhibits 21A through 21C. The Lanchester patent was introduced as Defendant's Exhibits 22A and 22B.

7. The United States Lord patent 2,384,939 was not cited by the Examiner during the prosecution of the Herring patent 2,828,166. The Lord patent discloses the entire combination of elements recited in Claim 1 of Herring patent 2,828,166 except for platform extensions providing a "continuous passageway."

No patent was cited by the Patent Office during the prosecution of the

Herring patent which discloses this much of the combination set forth in Claim 1.

8. The Mitchell patent 2,778,694 and the Lanchester patent 2,430,179, which were not cited by the Patent Office, both disclose mutually facing extensions on platforms which may be independently elevated. These extensions, when horizontally aligned, would provide a "continuous passageway." The Mitchell patent specifically recites that the aligned platforms provide a "continuous walkway."

During the prosecution of the Herring patent, the Examiner did not cite any prior art as pertinent as the Mitchell and Lanchester patents are to the "continuous passageway" concept recited in Claim 1 of this patent.

9. In a deposition taken January 10, 1962 in connection with Civil Action 10,685 then pending before this Court, the patentee Herring admitted that the details of his stand beyond the concept of catwalks mounted on carriages for elevating and swinging movement involved "routine engineering." (Pages 46 and 47 of Herring deposition introduced as Defendant's Exhibit 10).

10. At no point during the trial did the plaintiff offer any evidence or testimony tending to establish that, in view of the disclosures of the Lord, Mitchell and Lanchester patents which the Examiner did not consider, the utilization of platform extensions to provide a continuous passageway between independently elevatable and pivotable catwalks would be unobvious to those having ordinary skill in the service stand art.

11. The idea involved in Claim 1 of Herring patent 2,828,166, of mounting a platform supporting carriage for elevating movement on trackways, mounting the trackways on an upright support, and supporting a catwalk on the carriage for horizontal, pivotable movement was used in an aircraft service stand in use on the premises of American Airmotive in Miami, Florida in 1952, i. e. over a year ahead of Herring's alleged date of invention in 1954. The structure of this

stand was established at trial by Defendant's Exhibits 18A through 18C. Uncontradicted testimony by defendant's witness James C. Chokanis established that the stand in these exhibits was in use during 1952.

12. The idea of a work platform having two independently and horizontally pivotable catwalks was employed in an aircraft service stand in use on the premises of Eastern Airlines in Miami, Florida prior to Herring's alleged date of invention of 1954. The structure of this stand was established at trial by Defendant's Exhibits 7A through 7C. This stand includes platform means providing a walkway or passageway between two pivoted catwalks as schematically illustrated in Defendant's Exhibit 7C. The existence of this stand prior to 1954 was established in paragraph 48 of page 7 of the Pretrial Stipulation.

13. The idea of mounting a catwalk on a tower for elevating movement was embodied in an aircraft service stand sold to the United States Air Force prior to 1954. The structure of this stand was established at trial by Defendant's Exhibits 6A and 6B at trial. The existence of this stand prior to 1954 was established by paragraph 49 of page 7 of the Pretrial Stipulation. During the trial Herring admitted that he was aware of this stand when he represented to the Patent Office in column 1 of his patent that "ladders, trucks and makeshift scaffolding" constituted the type of equipment used to service aircraft prior to his alleged invention.

14. The concept of providing a platform extension in an aircraft service stand to increase working space is disclosed in the United States Swaisgood patent 2,362,170, not cited by the Patent Office, which also antedates Herring's alleged date of invention in 1954. The structure featured in this patent was introduced as Defendant's Exhibits 20A through 20C.

### Premise of Patent Grant

15. Except for the recitation of "platforms extending to a position inter-

mediate said pairs of tracks whereby a continuous passageway is provided between said catwalks," the combination of elements recited in Claim 1 of patent 2,828,166 has, in substance, been ruled by the Patent Office to be unpatentable over the prior art which was cited by the Examiner. This ruling is evidenced by the rejection of Claim 3 in Herring application Serial No. 531,857 and Claim 2 of a Matthews application Serial No. 533,752, filed August 12, 1955. The subject matter and scope of Claim 3 of the Herring application were established by Defendant's Exhibit 14A and testimony relating thereto. The subject matter and scope of Claim 2 of the Matthews application were established by Defendant's Exhibits 4A and 5.

16. In a paper filed March 11, 1957 in the Patent Office, a patent attorney representing Herring asserted that application claims including Claims 14 and 15 (which became Claims 1 and 2, respectively, of the Herring patent), recited structure which produced a function not disclosed by the prior art, "namely, affording a continuous passageway" when the catwalks of the Herring stand were on the same level. (Pages 37 and 38 of file history of Herring patent, i. e. Defendant's Exhibit 9)

In this March 11, 1957 communication, Herring's patent attorney referred to a passageway "that is continuous from one catwalk to the other" as being a feature which distinguished Claim 1 of the Herring patent (application Claim 14) from the disclosure of the cited Merrill et al. patent 2,614,893. (Third paragraph of page 36 of Defendant's Exhibit 9)

Herring's attorney, in this March 11, 1957 communication, referred to structure which permits the 90° pivoting of a catwalk and indicated that this feature was also a distinguishing aspect of this invention. However, the 90° pivoting action is not specified in the patent claim in suit.

The representations made by the attorney for Herring in the paper filed March 11, 1957 thus evidence that the "continuous passageway" recited in Claim 1 of the patent in suit was presented as the feature of this claim which distinguished it from the prior art and constituted the essence of patentability of this claim.

17. In a Patent Office paper dated November 20, 1957, the Examiner noted that Herring, in the arguments contained in the March 11, 1957 paper, indicated that "the essence of his invention really lies in providing for access as between a pair of horizontally spaced pivoted parallel or aligned catwalks in a manner not before known." (See page 40 of Defendant's Exhibit 9)

In the March 11, 1957 communication, the only discussion of providing access between catwalks relates to the "continuous passageway."

The Examiner, in the November 20, 1957 paper, allowed claims which recited a "continuous passageway," including the claim in suit and rejected a claim, i. e. application Claim 13, which did not call for structure providing a "continuous passageway."

Thus, the Patent Office communication dated November 20, 1957 in the file history of Herring patent 2,828,166, when interpreted with reference to the March 11, 1957 paper, establishes that the Patent Office considered the patentable essence of Claim 1 of this patent (Claim 14 of the application) to reside in a "continuous passageway" between catwalks.

18. The communication filed in the Patent Office on December 3, 1957 by Herring's attorney contained a cancellation of Claim 13 which did not recite a "continuous passageway." The cancellation of Claim 13 constituted an acquiescence by Herring to the position taken by the Patent Office in the November 20, 1957 communication to the effect that the essence of Herring's invention resided in a "continuous passageway" between catwalks. (Page 41 of Defendant's Exhibit 9)

19. In a deposition taken August 2, 1965, the patentee Herring admitted that

the extension of platforms to provide a "continuous passageway" is a "very small part" of his alleged invention and "incidental." Herring further admitted that the "continuous passageway" feature was not important. (Pages 12 and 23 of Herring deposition introduced as Defendant's Exhibit 11)

### Meaning of Patent Terms

20. The original disclosure submitted by Herring as the basis for the grant of patent 2,828,166 makes no reference to "a continuous passageway" but represents that carriage platforms, when aligned, permit a person *to walk* from one catwalk to the other of the stand featured in this disclosure. No other mode of direct movement between platforms was disclosed by Herring. (Lines 1 through 5 of Column 5 of patent 2,828,-166 introduced as Plaintiff's Exhibit 13)

21. The aligned platforms which permit a person to walk from one catwalk to the other, as shown in the Herring disclosure, are illustrated as having nearly contiguous and wholly unobstructed, mutually facing platform edges. (Figure 6 of patent, Plaintiff's Exhibit 13)

22. In a communication filed March 11, 1957 in the Patent Office, the attorney for Herring represented that the "continuous passageway," as recited in Claim 1 of the Herring patent, "permits a person to walk from one catwalk to the other." (See page 37, Defendant's Exhibit 9) This belated representation is the only attempted definition of the term "continuous passageway" appearing in the entire prosecution history of the Herring patent, and it is inadequate since Herring has admitted that the patent disclosure itself does not define the platform spacing necessary to constitute a "continuous passageway." (Page 29 of August 2, 1965 Deposition of Herring, Defendant's Exhibit 11)

23. Uncontradicted testimony of defendant's witness Dr. H. A. B. Wiseman established that the term "continuous" is ordinarily defined to mean uninterrupted.

24. Claim 1 of Herring patent 2,828,-166 calls for "pivot means mounting one end of each of said catwalks to the outer end of said carriages." (Plaintiff's Exhibit 13)

25. The only location of pivot means for connecting a catwalk to a carriage which is illustrated or described in Herring patent 2,828,166 comprises a pivot pin 84 located generally centrally of the carriage tracks and spaced away from the tracks. This location may be considered the front of the carriage.

26. In presenting Claim 1 to the Patent Office as application Claim 14, Herring's attorney represented that this claim recited "catwalks having triangular ends" and further asserted the importance of structure which enabled a catwalk to pivot 90°. (Remarks portion of March 11, 1957 communication commencing at page 35 of Defendant's Exhibit 9 and especially the third paragraph of page 35, the third paragraph of page 36 and the first paragraph of page 37)

A catwalk pivot at the "outer end" of a carriage, in combination with a triangular catwalk end, is significant in that it would allow the unique 90° catwalk pivoting action which Herring's attorney asserted to be a distinguishing feature of the Herring stand in the March 11, 1957 communication. (Third paragraph of page 36 and first paragraph of page 37 of Defendant's Exhibit 9)

### Late Claiming

27. An aircraft service stand was described in U. S. patent 2,828,166, constructed in accordance with Claim 1 of this patent and called the "1001 stand," was publicly used by the plaintiff at West Palm Beach Airport in 1955. (Paragraphs 9, 10 and 11 of page 2 of the Pretrial Stipulation)

28. Herring filed an amendment on March 11, 1957, adding Claim 14 (which is now Claim 1 of the Herring patent). This was the first occasion on which the applicant Herring made any claim to the "continuous passageway" provided by

carriage platforms or to the carriage platforms of Claim 1.

29. The description in the Herring patent is silent concerning the spacing of platform extensions being such as to provide a continuous passageway as mentioned in Claim 1. Nothing is said regarding what degree of spacing will accomplish this and what will not.

30. The plaintiff's commercial "1001 stand" was in public use more than a year prior to March 11, 1957 when the limitations concerning platforms extending to provide a "continuous passageway" were first introduced into the claims of the application of the Herring patent. The written description had never included this statement.

31. The patentee Herring has admitted that there is nothing in the Herring patent 2,828,166 which defines the spacing of platform edges necessary to yield a "continuous passageway," has admitted that this spacing is a matter of opinion, and has further admitted that it would be necessary to "guess" as to this spacing. (Page 29 of Herring deposition of August 2, 1965, introduced as Defendant's Exhibit 11)

*Lack of Oath*

32. Claim 1 of patent 2,828,166 was submitted to the Patent Office without an accompanying oath and no oath was filed subsequent to the submission of this claim. Claim 1 of the patent was originally submitted as Claim 14 of application Serial No. 531,857 on March 11, 1957. (Page 33 of Defendant's Exhibit 9)

33. Twelve claims were originally filed in Herring application Serial No. 531,857, on September 1, 1955. Not one of these twelve original claims called for carriage platforms such as are recited in Claim 1 of the Herring patent 2,828,-166. Not one of these twelve original claims recited a "continuous passageway" provided by extensions of such platforms. (Pages 15 through 20 of Defendant's Exhibit 9)

34. The term "platform" as used in original Claims 1 through 12 in Herring application Serial No. 531,857 refers to the structure denominated as "catwalks" in Claim 1 of the issued Herring patent 2,828,166 as evidenced by other recitations of these claims and the testimony of defendant's witness, Dr. Wiseman.

35. The terminology in Claim 1 of the Herring patent, "platforms extending to a position intermediate said pairs of tracks whereby a continuous passageway is provided between said catwalks," appears neither in the Statement of Invention, which appears in Column 1 of the Herring patent 2,828,166, nor in any other portion of the specification of this patent which precedes the claims.

36. The reference in Column 1 of the Herring patent to the alignment of catwalks to form a "continuous catwalk" does not constitute a description of carriage platform extensions which provide a continuous passageway between catwalks as set forth in Claim 1 in suit.

37. While in the descriptive portion of the specification of the Herring patent 2,828,166 (lines 1 through 5 of column 5) reference is made to permitting a person to walk from one catwalk to another, the *Statement of Invention*, which is set forth, in Column 1 of the Herring patent, contains no mention of carriages or carriage platforms which would be necessary to provide a continuous passageway between catwalks as called for in Claim 1 of Herring patent 2,828,166.

38. Not one of the objects of invention in Columns 1 and 2 of the Herring patent refers to the feature of platform extensions providing a continuous passageway.

39. The original Claims 1 through 12 and the Statement of Invention in Herring application Serial No. 531,857 pertain to one or more aspects of service stands made in sections and having catwalks mounted for elevating and pivoting movement so that workmen may be selectively positioned.

Testimony by defendant's witness Dr. H. A. B. Wiseman established that the catwalk movement concept is functionally different from the concept of providing

carriage platform extensions which serve to define a continuous passageway when horizontally aligned.

40. The "continuous passageway" recitation of Claim 1 of patent 2,828,166, was asserted by Herring's attorney, in substance, as being the patentable essence of this claim and constitutes a phase of Herring's alleged invention which is different from the catwalk movement phase set forth in the original claims of Herring's application Serial No. 531,857.

### Inventorship

41. A stand responding to the structural combination recited in Claim 1 of Herring patent 2,828,166 was disclosed in an application for patent, Serial No. 533,752, filed September 12, 1955 by Benjamin F. Matthews. (Defendant's Exhibits 4A through 4D)

42. Defendant's witnesses Richard W. Logan, Virgil Pope and Ronald Clarke provided uncontroverted testimony to the effect that Benjamin F. Matthews had discussed and sketched various aspects of a stand such as that featured in Herring patent 2,828,166 during the early part of 1954.

43. Plaintiff's witness Peter Becker admitted that he could not recall that Matthew M. Herring had engaged in any activity concerning the stand featured in patent 2,828,166 prior to the latter part of 1954.

44. Plaintiff's witness George Smith testified that, as an employee of Aircraftsmen, Inc., when he wished instructions or information concerning the manufacture of a stand such as that shown in patent 2,828,166 he generally contacted Mr. Benjamin F. Matthews and seldom contacted Matthew M. Herring.

45. None of the testimony by the plaintiff's witnesses established that Matthew M. Herring conceived the purported invention featured in patent 2,828,166 as early as the early part of 1954.

46. The plaintiff offered no evidence to persuasively contradict the mutually corroborating testimony of the defend-ant's witnesses Logan, Pope and Clarke to the effect that a stand such as that shown in Herring patent 2,828,166 was designed and invented by Benjamin F. Matthews in the early part of 1954 while Matthews was working for the plaintiff, Aircraftsmen, Inc., as a designer.

47. No testimony or evidence was offered by plaintiff to establish that the knowledge in early 1954 by Matthews, Logan, Pope, and Clarke of the stand featured in the Herring patent was kept secret or suppressed.

### Defendant's Stand

48. The stand sold by the defendant, Aircraft Equipment Company, to Lockheed-Georgia Company and charged to infringe the Herring patent does include a tower, two pairs of tracks mounted on the tower, and a carriage mounted for elevating movement on each pair of tracks. A catwalk is mounted for horizontal pivoting movement on each carriage. A barricaded, i. e. obstructed, platform is provided on each carriage which projects beyond the centermost tower tracks into the space between these tracks. Two platform barricades provided on the two carriage platforms are formed by two guard rail barrier structures spaced about one foot apart when the platforms are aligned, with each barrier being about three feet high. Each of these guard rail barriers is welded to an edge of a carriage platform which faces the space between carriages. Each guard rail barrier includes a top rail disposed about three feet above its associated platform and a lower rail disposed about one and one half feet above this platform and carries an electrical control panel. (Paragraphs 42, 43 and 44 of page 7 of the Pretrial Stipulation)

49. The exhibits and testimony offered during the trial established that the spaced, welded-in-place, guard rail barriers in the defendant's stand cooperate with the platforms on this stand to vitiate any pretext of a "continuous passageway" provided by the carriage platforms of this stand and provide a barrier between the carriage platforms of this stand which is permanent in design.

50. The full scale prototype models of platform portions of the defendant's stand embodied in Defendant's Exhibits 3B and 15B were examined by the Court and establish that the defendant's stand lacks "platforms extending to a position intermediate said pairs of tracks whereby a continuous passageway is provided between said catwalks" as recited in Claim 1 of the Herring patent 2,828,166.

51. As there is no "continuous passageway" or walkway provided by carriage platforms in the defendant's stand, the combination, in this stand, of guard rail barriers with carriage platforms does not constitute an addition to the combination recited in Claim 1 of the Herring patent.

52. Testimony by defendant's witness Dr. H. A. B. Wiseman, as well as the structure of the defendant's stand established that workmen would not be able to walk, in the ordinary sense of the word "walk," from one platform to the other of this stand. While the guard rail barricades in the defendant's stand are not insurmountable, workmen could not move in a continuous or free manner between the platforms of this stand because of the interrupting effect of these barricades.

53. The plaintiff has no knowledge of, and has not established, any instance where any person has moved directly from one carriage platform to the other in the stand sold by the defendant to Lockheed-Georgia Company. (Paragraph 50 of page 7 of Pretrial Stipulation)

54. In the stand sold by the defendant to Lockheed-Georgia Company, the pivot means which connects each catwalk to a carriage is located substantially adjacent a diagonal corner of the carriage so as to be disposed somewhat laterally of the carriage, rather than in front of the carriage and between the carriage tracks, as evidenced by Defendant's Exhibit 15B and Plaintiff's Exhibit 15A. These exhibits also established that the ends of the catwalks in the Defendant's stand, which are connected with carriages, are not triangular.

55. The full scale prototype model of the carriage portion of defendant's stand as embodied in Defendant's Exhibit 15B, as well as the plaintiff's model of the defendant's stand embodied in Plaintiff's Exhibit 15A, established that the defendant's stand lacks "pivot means mounting one end of each of said catwalks to the outer end of said carriages" as called for by Claim 1 of the Herring patent 2,828,166.

## CONCLUSIONS OF LAW

### Jurisdiction

I. The Court has jurisdiction of the plaintiff's complaint under 35 U.S.C. § 281 and 28 U.S.C. § 1338, with venue being based on 28 U.S.C. § 1400.

II. The Court has jurisdiction over the subject matter of the defendant's counterclaim pursuant to 28 U.S.C. § 1338 and 28 U.S.C. § 2201.

### The Defendant's Stand Does Not Infringe the Herring Patent

III. The spaced platform edges of the stand sold by the defendant to Lockheed-Georgia Company, in combination with the guard rail structures on the confronting platform edges, do not constitute platforms extending to provide a "continuous passageway" when the term "continuous passageway" is construed, as it must be, in the context of the disclosure and other representations made to the Patent Office to induce the allowance of Claim 1 of the Herring patent 2,828,166. Price-Trawick, Inc. v. Gas Lift Corp., 101 F.2d 134 (5th Cir. 1939); and Kinnear-Weed Corp. v. Humble Oil and Refining Co., 259 F.2d 398 (5th Cir. 1958).

IV. The spaced platform edges of the stand sold by the defendant to Lockheed-Georgia Company, in combination with the guard rail structures on the confronting platform edges, do not constitute platforms extending to provide a "continuous passageway" when the term "continuous" is construed according to common usage as may be done in

order to show that a patent term, in common usage, has the same meaning as would result from an interpretation of the patent disclosure. Godfrey L. Cabot, Inc. v. J. M. Huber Corp., 127 F.2d 805 (5th Cir. 1942).

V. Since emphasis was placed upon the "continuous passageway" recitation, as opposed to the mere "platform" recitation, in Claim 1 as constituting the feature which entitled Herring to a patent, the entire recitation in Claim 1 of the Herring patent 2,828,166 of "platforms extending to a position intermediate said pairs of tracks whereby a continuous passageway is provided between said catwalks" must be construed such that the "continuous passageway" is an element essential to the combination defined in this claim. Reed v. Parrack, 276 F.2d 784 (5th Cir. 1960); and Powder Power Tool Corp. v. Powder Actuated Tool Co., Inc., 230 F.2d 409 (7th Cir. 1956).

VI. The prosecution history of the Herring patent establishes that the "continuous passageway" feature was particularly emphasized as constituting the basis of the patent grant, and this feature was required by the Patent Office to be included in claims if they were to be allowed; therefore, the "continuous passageway" recitation must be deemed an essential feature of Claim 1 of the Herring patent necessary to establish infringement. Edwards v. Johnston Formation Testing Corp. et al., 56 F.2d 49 (5th Cir. 1932); Price-Trawick, Inc. v. Gas Lift Corp., 101 F.2d 134 (5th Cir. 1939); Reed v. Parrack, 276 F.2d 784 (5th Cir. 1960); Industrial Instrument Corp. v. Foxboro Co., 307 F.2d 783 (5th Cir. 1962); and Powder Power Tool Corp. v. Powder Actuated Tool Co., Inc., 230 F.2d 409 (7th Cir. 1956).

VII. The stand sold by the defendant to Lockheed-Georgia Company lacks a "continuous passageway" provided by carriage platform extensions. Even though this term appears in the context of "whereby" clause in Claim 1 of the Herring patent, it was essential to the allowance of this claim and thus is essential to the establishment of infringement; therefore, the defendant's stand, which lacks this feature, does not infringe Claim 1 of the Herring patent. Price-Trawick, Inc. v. Gas Lift Corp., 101 F.2d 134 (5th Cir. 1939); and Powder Power Tool Corp. v. Powder Actuated Tool Co., Inc., 230 F.2d 409 (7th Cir. 1956).

VIII. The stand sold by the defendant to Lockheed-Georgia Company does not enable workmen to walk or move in an uninterrupted fashion directly from one carriage platform to the other and therefore does not produce the result of the combination set forth in Claim 1 of the Herring patent and does not infringe this claim. Industrial Instrument Corp. v. Foxboro Co., 307 F.2d 783 (5th Cir. 1962).

IX. The pivot joints in the defendant's stand sold to Lockheed-Georgia Company, which connect catwalks to carriages, do not mount the catwalks to the "outer end" of the carriages as recited in Claim 1 of the Herring patent when this patent claim is construed, as it must be, with reference to the Herring disclosure. Price-Trawick, Inc., v. Gas Lift Corp., 101 F.2d 134 (5th Cir. 1939); and Kinnear-Weed Corp. v. Humble Oil and Refining Co., 259 F.2d 398 (5th Cir. 1958). It should be noted here that the defendant's stand also lacks a catwalk having a triangular end which Herring's patent attorney represented was included in Claim 1 and which would lend significance to the "outer end" location of the catwalk pivot.

X. The omission in the defendant's stand sold to Lockheed-Georgia Company of either a "continuous passageway" or pivot means mounting one end of each of the catwalks to the "outer end" of the carriages, or the combined omission of both of these elements of Claim 1 of the Herring patent, avoids infringement of this claim such that this stand does not infringe Claim 1 of the Herring patent. Stewart-Warner Corp. v. Lone Star Gas Co. et al., 195 F.2d 645 (5th Cir. 1952).

*The Herring Patent 2,828,166 Is Invalid*

■ XI. There is no evidence that the Patent Office considered the Lord, Mitchell and Lanchester patents, and these prior art patents were not cited by the Patent Office during the prosecution of the Herring patent. Since these patents are more pertinent to the overall combination and "continuous passageway" aspect of Claim 1 of the Herring patent than any of the patents which the Patent Office did cite, the presumption of validity attaching to the Herring patent is severely weakened, if not completely destroyed. Cornell v. Adams Engineering Co., 258 F.2d 874 (5th Cir. 1958).

■ XII. Each element recited in Claim 1 of the Herring patent is individually old and functions individually in the claimed combination as it did in the prior art Lanchester, Mitchell and Lord patents, and Herring has admitted that the "continuous passageway" feature which induced the grant of Claim 1 is "incidental" and not important. Therefore, the combination set forth in Claim 1 does not constitute patentable invention. Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp. et al., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Graham et al. v. Jeoffroy Mfg., Inc. et al., 206 F.2d 769 (5th Cir. 1953); and Cornell v. Adams Engineering Co., 258 F.2d 874 (5th Cir. 1958).

XIII. The upright support, tracks, carriage and catwalk elements recited in Claim 1 of the Herring patent 2,828,166 were individually old, both as to structure and function, in aircraft service stands prior to Herring's alleged date of invention. The Mitchell and Lanchester patents taught, prior to Herring's alleged date of invention, the structure and functional result of platform extensions which could be mounted on independently elevatable structures and which would provide a "continuous passageway" when aligned. Accordingly, Claim 1 of the Herring patent does not define patentable invention. Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp. et al., 340 U.S. 147, 71 S.Ct. 127 (1950); Graham et al. v. Jeoffroy Mfg. Inc. et al., 206 F.2d 769 (5th Cir. 1953); and Cornell v. Adams Engineering Co., 258 F.2d 874 (5th Cir. 1958).

■ XIV. The combination of elements recited in Claim 1 of the Herring patent 2,828,166, apart from the recitation of platforms extending to provide a "continuous passageway," is antedated by the disclosure of the Lord patent, and the Patent Office in both the Herring and Matthews applications, in substance, ruled this combination to be unpatentable. Herring has admitted that everything beyond this unpatentable and old combination constitutes "routine engineering." Therefore, by Herring's own characterization of his alleged invention, the combination of Claim 1—comprising an old and unpatentable combination augmented only by "routine engineering"— is invalid as failing to comply with the statutory standard of patentability. Section 103 of Title 35 of the United States Code requires that an invention, to be patentable, must be unobvious to those having ordinary skill in the art—not merely "routine." Lorenz v. General Steel Products Co., 337 F.2d 726 (5th Cir. 1964).

That Herring's "routine engineering" contribution cannot support a patent is self-evident from current rulings of the Fifth Circuit Court of Appeals. As recently as 1963 this Court of Appeals, in Anthony v. Ranco, Inc., 5 Cir., 316 F.2d 509, struck down patent claims saying, at page 512 of the decision: "Such advance in the art, if advance there was, merely resulted from that type of activity reasonably to be expected of those mechanically skilled in the applicable art." The patentee Herring, by his own confession, falls into this category such that his Claim 1 is invalid.

■ XV. Since Herring admits that patent 2,828,166 does not define the spac-

ing of structure which would provide a "continuous passageway," and since Herring admits that it would be necessary to guess as to the limits of this structure, Claim 1 of the Herring patent is invalid in that it fails to inform the public of the limits of the asserted monopoly. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402 (1938); and United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232 (1942).

■ XVI. The "continuous passageway" recitation in Claim 1 of the Herring patent was the feature of this claim essential to the patent grant, and this claim was presented to the Patent Office over a year subsequent to the time when the plaintiff was publicly and commercially utilizing a stand responding to Claim 1. Since the submission of Claim 1 to the Patent Office constituted the first time that the "continuous passageway" feature was claimed, and since the patentee Herring admits that his original disclosure is inadequate in that it fails to define the platform spacing necessary to constitute the essential "continuous passageway" feature, Claim 1 of the Herring patent is invalid. Muncie Gear Works v. Outboard Marine and Manufacturing Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171 (1942); and Monroe Auto Equipment Co. v. Heckethorn Manufacturing and Supply Co., 204 F.Supp. 249 (W.D.Tenn.1961).

■ XVII. Claim 1 of the Herring patent 2,828,166 was submitted without a supplemental oath. This claim emphasizes the "continuous passageway" feature which was not originally claimed or substantially embraced within the statement of invention or statement of objects in the Herring application. The "continuous passageway" feature constitutes a phase of the Herring stand quite different from that which was originally claimed. Therefore, Claim 1

of the Herring patent is invalid as failing to comply with Rule 67 of the Rules of Practice of the United States Patent Office in Patent Cases. Glade v. Walgreen Co. et al., 122 F.2d 306 (7th Cir. 1941); and M. & R. Dietetic Laboratories, Inc. v. Dean Milk Co., 203 F. Supp. 130 (N.D.Ill.1961).

XXVIII. The testimony of the defendant's witnesses Logan, Pope and Clarke and the plaintiff's witness Smith creates a substantial impression that the stand featured in the Herring patent was invented first by Benjamin F. Matthews rather than by Matthew M. Herring. However, the Court's finding that the subject matter of the patent claim in suit is not patentable eliminates the necessity of attempting to resolve the issue of inventorship.

■ XIX. The burden of establishing invalidity of the Herring patent rested on the defendant pursuant to 35 U.S.C. § 282. However, the defendant fulfilled this burden and proved beyond reasonable doubt that the presumption of validity attaching to the Herring patent was either severely weakened or altogether destroyed and met the burden of invalidating the claim in suit, with the Court being mindful of the statutory standard of patentability and the Supreme Court admonition that: "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great Atlantic and Pacific Tea Company v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127 (1950)

XX. In view of the foregoing findings there is no liability on the part of the individual defendant Richard W. Logan.

Final judgment in conformity with the foregoing Findings of Fact and Conclusions of Law shall be submitted by defendants within fifteen (15) days.