**Jack C. WEBBER and Mission Manufacing Company, Plaintiffs,**

v.

**The GUIBERSON CORPORATION, Defendant.**

**Civ. A. No. 8809.**

United States District Court
S. D. Texas,
Houston Division.

March 6, 1963.

Browning, Simms & Hyer, Ralph Browning, Vinson, Elkins, Weems & Searls, and Joe E. Edwards, Houston, Tex., for plaintiffs.

Howard E. Moore, Dallas, Tex., Turner, Rodgers, Winn, Scurlock & Terry, George S. Terry and Frank J. Scurlock, Dallas, Tex., for defendant.

HANNAY, District Judge.

FINDINGS OF FACT

1.

Plaintiff Jack C. Webber of Corpus Christi, Texas, is the owner of the entire

right, title and interest in and to Webber Patent No. 2,633,808 issued April 7, 1953, entitled "Well Swab" (hereinafter referred to as the 808 patent), and in and to Webber Patent No. 2,719,768 issued October 4, 1955, entitled "Well Tools and Sealing Means Therefor" (hereinafter referred to as the 768 patent).

2.

Plaintiff Mission Manufacturing Company of Houston, Texas, is the exclusive licensee of Jack C. Webber and holds the exclusive right to manufacture, use and sell the inventions of the 808 and 768 patents. Mission manufactures and sells well swabs identified as "Mission E-Z" (Pl. Ex. 5) under the license (Pl. Ex. 43).

3.

Defendant Guiberson Corporation of Dallas, Texas, maintains a regular established place of business in Houston, Texas, and has sold throughout the Southern District of Texas and elsewhere well swabs identified as "Simplex" Swab Cups (Pl. Ex. 8) and "Multi-wing" Swab elements (Pl. Ex. 7).

4.

A well swab is a device which is lowered on a wire line or cable into a well pipe containing a column of liquid. During lowering, the swab does not seal with the bore of the pipe and liquid is thereby allowed to bypass the device. When the swab is below the desired volume of liquid, the wire line is reeled in at the surface to raise the swab. During raising, the swab element moves into sealing engagement with the wall of the pipe, whereby the liquid thereabove is trapped and is lifted to the surface and thereby removed from the well pipe. Swabbing of liquids from wells is usually carried out in well completion operations to cause the well to flow although it is used for other purposes.

5.

Prior to the granting of the Webber patents-in-suit, there were two general types of well swabs in use, the cup-type and the plug-type.

The cup-type is the most popular and consists of an upwardly directed cup of rubber or elastic material. When the upwardly directed cup has been lowered under a column of liquid, it is raised and the liquid lead expands the cup radially into tight sealing engagement with the wall of the well pipe whereby the liquid thereabove is lifted. Because the liquid is acting to increase the sealing effectiveness of the swab cup, this type of cup operates on the principle of "the heavier the load, the tighter the seal." Examples of the cup-type swab are Plaintiffs' Exhibits 39 and 40 and Defendant's Exhibits 56, 57 and 58.

The plug-type swab is one which is constructed to form a solid plug and fill the well pipe during the raising operation. A plug-type may take several different forms. It may be a solid body of rubber material which under load is radially expanded into sealing position; it may be a body which is split vertically as exemplified by Mission's split swab (Pl. Ex. 52); or it may be a multi-piece plug consisting of a back-up member having resilient washers supported thereon as shown by the "Stick Swab" (Def. Exs. 1, 14, 26, 47, 49). But regardless of physical form, all plug-type swabs are specifically designed to substantially fill the bore of the well pipe when a liquid load is acting thereon, and since the liquid load is depended upon to flatten the plug and thereby deform it radially into sealing position, the plug-type swabs operate on the same principle as the cup-type, that is, "the heavier the load, the tighter the seal."

Because both cup-type and plug-type swabs operate on the same principle of "the heavier the load, the tighter the seal," both types may be overloaded if the swab is beneath too much fluid; further, such swabs are subject to excessive wear and have a strong tendency to stick or hang-up during lifting. Also, because the swabs must be deformed in a radial direction in order to effect a seal, the clearance between the swab and pipe during lowering is held to a minimum and difficulty is experienced in lowering the

swab through restrictions in the pipe. The cup-type swab has the further inherent disadvantage of completely inverting and failing under heavier loads if it is not properly reinforced and braced.

### 6.

Defendant has been engaged in the manufacture of well swabs since the early 1920's and is the foremost leader in the swabbing industry. Its engineering and research staff has made numerous developments in this field and it is the owner of many patents (Pl. Ex. 76) in the well swab field. Throughout the years, Defendant has featured the cup-type swab and has directed all of its efforts to provide reinforcing and bracing in the form of wires, sleeves, collars, inserts and ribs for the purpose of preventing the cup element of the swab from inverting under load. This reinforcing and bracing has effectively prevented the cup element from inverting and thereby failing but it has not overcome the other problems of overloading, excessive wear, tendency to stick or "hang-up" during lifting and difficulty in lowering. Defendant never manufactured any swab operating on the principle of "the heavier the load, the lighter the seal" as taught by the patents-in-suit until after it learned of Plaintiffs' swab.

### 7.

The problems of overloading, excessive wear, tendency of sticking by reason of restrictions, sand conditions and the like and difficulty in lowering have been present in the industry for at least thirty years prior to the Webber inventions. These problems caused breakage of the line or cable, loss of swabs and in many instances, required the well pipe or tubing to be removed from the well at substantial cost and expense; in some instances, the sticking of a swab may result in total loss of the particular well.

Throughout the years, attempts have been made to solve certain of these problems and Defendant here was cognizant of the overload problem and attempted to solve the same by manufacturing mechanical overload devices. The Mission split swab and the stick swab are examples of attempts to solve the problem of difficulty in lowering. However, because all swabs, prior to the Webber inventions, operated on the principle of "the heavier the load, the tighter the seal," no solution was provided for the problem of excessive wear or for the problem of sticking or hanging-up during the lifting operation. And the industry lived with the problems and suffered the economic consequences thereof.

### 8.

It was in this state of the art that Plaintiff Webber conceived the swab disclosed and claimed in the patents-in-suit. The Webber swab consists of a swab element having a plurality of elastic sealing rings which are so constructed and related to the well pipe that during lowering each sealing ring does not seal with the pipe to permit free bypass of liquid; upon raising, the liquid load acts upon the ring to move the same downwardly to a trailing position and while in such trailing position said ring engages the well pipe to properly seal and carry the required liquid load; in case of overload each ring may move farther downwardly to automatically bypass liquid until the overload condition is relieved after which the ring again returns to load-carrying position.

The Webber swab operates on an entirely new principle as compared to prior known swabs in that the imposition of increased load beyond that which the ring can carry tends to move the ring toward a non-sealing position. In the Webber swab, the operating principle is "the heavier the load, the lighter the seal" which is directly opposed to the operating principle of the prior swabs.

### 9.

The Webber swab effectively solved the major problems which had been long-existent in the swabbing art. By reason of its structure and relationship to the pipe, overloading because of excessive liquid, sanding conditions or for other reasons is not possible. Excessive wear is reduced because the liquid load is not

functioning to urge the sealing element into tighter engagement with the pipe wall. The unreinforced swab lips provide the necessary flexibility to facilitate its lowering in restrictions such as paraffin, scale or tight spots in the tubing. And, finally, it is not expanding in diameter, in the manner of the prior known swabs, as it is raised and the tendency of sticking or "hanging-up" during lifting is substantially eliminated. The Webber swab, as disclosed and claimed in the patents-in-suit, constituted a major step forward in the swabbing art.

#### 10.

The first Webber 808 patent discloses the well swab having the periphery of its sealing rings beveled or inclined inwardly. This physical form operates in accordance with Webber's basic concept. The Webber 768 patent discloses the periphery of each sealing ring as cylindrical, that is, parallel to the axis of the device. This modification of shape provides additional wear surface on each sealing ring which increases the wear life of the swab and constitutes an improvement upon the structure shown in the 808 patent. The physical structures of both the 808 and the 768 patents operate on Webber's basic principle of "the heavier the load, the lighter the seal," and both produce the improved practical advantages never before attained in the art.

#### 11.

During the prosecution of the Webber patents-in-suit through the Patent Office, the Patent Office considered prior devices such as well packers, pump plungers, separator devices and well swabs (Pl. Exs. 3a and 4a). These are the same classes of devices upon which Defendant relies and are no more pertinent than the prior art which the Patent Office considered during action on the Webber patents and over which the Patent Office allowed the claims here in suit.

#### 12.

The Simplex swab cups (Pl. Ex. 8), manufactured and sold by Defendant are of substantially the same structure, operate in substantially the same way as the swabs disclosed and claimed in the Webber patents-in-suit and produce the same practical advantages. The "Simplex" swab cups singularly and in combination with a supporting mandrel clearly correspond element for element with Claims 1 and 4 through 15 of the 808 patent. Defendant's admissions establish this to be the fact.

#### 13.

The "Multi-wing" swab (Pl. Ex. 7), manufactured and sold by Defendant, is of identical construction to the structure shown and functions in exactly the same manner of the swab disclosed and claimed in the patents-in-suit and produces the same practical advantages. The "Multi-wing" swab elements singularly and in combination with a supporting mandrel clearly correspond element for element with Claims 1 and 4 through 15 of the 808 patent. Defendant's admissions establish this to be the fact.

#### 14.

Shortly after Defendant became aware of the swab disclosed and claimed in the patents-in-suit, Defendant proceeded to design the "Simplex" swab which has been offered for sale since that time. Although satisfactory to an extent, Defendant's customers demanded that Defendant produce a swab like the Mission "E-Z" swab (Pl. Ex. 71) which is the commercial swab constructed in accordance with the disclosure and claims of the patents here in suit. By reason of the pressure of customer demand and repeated insistence by Defendant's sales force, Defendant willfully and deliberately copied the commercial form of the swab of the patents-in-suit. The comparative dimensions of Plaintiffs' commercial swab and those of Defendant's "Multi-wing" swab (Pl. Ex. 64) conclusively establish that Defendant exactly copied Plaintiffs' commercial form. The physical exhibits (Pl. Exs. 7, 73) further establish that Defendant's swab is such a close copy of Plaintiffs' swab that it is difficult to tell them apart.

**15.**

The application for the 768 patent was filed over four years after the application for the 808 patent.

**16.**

All Webber sealing devices, beginning with the first experimental model made by Murray Rubber Company in December, 1948 were made in accordance with the disclosure of the 768 patent including the cylindrical edge and extra wear surface.

**17.**

Beginning on December 2, 1949, and extending through June of 1950, Jack C. Webber sold 37 swab cups made in accordance with the 768 Patent to Rhea Brooks Supply Company of Kilgore, Texas, who in turn sold same to Shell Oil Company, Kilgore, Texas. Shell Oil Company used said swab cups in swabbing their wells during such period.

**18.**

Jack C. Webber sold 15 of said swab cups during such period to Basin Supply Company of Midland, Texas (on April 29, 1950), which swab cups were used by Stanolind Oil & Gas Company in swabbing their wells in West Texas.

**19.**

Beginning on October 10, 1950, and extending through October 15, 1951, Mission Manufacturing Company, Plaintiff herein, and licensee under the Webber Patents, by nine separate sales, sold a total of 192 swab cups made in accordance with the 768 Patent to Shell Oil Company which were used by Shell Oil Company in swabbing their wells in East Texas.

**20.**

The sale of said swab cups by the Plaintiffs, Jack C. Webber and Mission Manufacturing Company, and the resale thereof by Rhea Brooks Supply Co. and Basin Supply Co., and the use thereof by Shell Oil Co. and Stanolind Oil & Gas Co., constituted public use and sale of devices made in accordance with the 768 Patent, more than one year before the patent was applied for.

The above testimony relating to prior use and prior sales is undisputed and therefore established convincingly by clear, cogent and satisfactory proof so that it removes all reasonable doubt that there was a prior public use and many sales made more than one year before the application for the 768 Patent was filed.

Section 102, Title 35, U.S.C.A. reads as follows:

"A person shall be entitled to a patent unless * * *

"(b) the invention was patented or described in a printed publication in this or a foreign country *or in public use or on sale* in this country, more than one year prior to the date of the application for patent in the United States, or" (emphasis supplied).

It then became incumbent upon the patentee to show that such use was experimental *only.* See Merrill v. Builders Ornamental Iron Co., (1952), 10 Cir., 197 F.2d 16.

The Plaintiffs herein have failed to sustain this burden. Here, as in Rosaire v. Baroid Sales Division, National Lead Co., 218 F.2d 72, (5th Cir.), cer. den. 349 U.S. 916, 75 S.Ct 605, 99 L.Ed. 1249, such use was not "an unsuccessful or incomplete experiment." At all times the design was substantially the same. The only problem was in the quality of the rubber used. This prior use and the prior sales were such an anticipation as to render the 768 Patent invalid. It is therefore unnecessary to consider the questions or contentions pertaining to patentability or infringement of the 768 Patent.

The Supreme Court of the United States has gone so far as to hold that the public use by *one* person of an invention is sufficient to condemn it. Egbert

v. Lippmann, 104 U.S. 333, 336, 26 L.Ed. 755:

> "We remark, secondly, that whether the use of an invention is public or private does not necessarily depend upon the number of persons to whom its use is known. If an inventor, having made his device, gives or sells it to another, to be used by the donee or vendee, without limitation or restriction, or injunction of secrecy, and it is so used, such use is public, even though the use and knowledge of the use may be confined to one person."

To the same effect see Application of Blaisdell, 242 F.2d 779, 784, 44 CCPA 846 (1957) and cases therein cited.

## CONCLUSIONS OF LAW

### 1.

This Court has jurisdiction of the parties and the subject matter of this suit.

### 2.

■ The prior art cited by Defendant does not anticipate Claims 1 and 4 through 15 of Webber Patent No. 2,633,-808.

### 3.

Claims 1 and 4 through 15 of Webber Patent No. 2,633,808 are valid.

### 4.

The clear unambiguous language of Claims 1 and 4 through 15 of Webber Patent No. 2,633,808 is applicable to the "Simplex" and "Multi-wing" well swabs manufactured and sold by Defendant and Claims 1 and 4 through 15 of this patent are infringed by these structures.

### 5.

An injunction shall issue enjoining Defendant from further infringement of Patent No. 2,633,808 and Defendant shall be ordered to account for damages suffered by Plaintiffs.

### 6.

■ Claim 5 of the 768 Patent is invalid and void because anticipated by prior use and prior sales.

### 7.

From what has been said above, judgment must be for Plaintiffs on the 808 Patent and for Defendant on the 768 Patent.

Clerk will notify counsel.