John M. SISKO, Plaintiff,

v.

SOUTHERN RESIN & FIBERGLASS CORPORATION, Defendant.

Civ. No. 64–465.

United States District Court
S. D. Florida.
Dec. 17, 1965.

Lynn F. Lummus, of Dawes & Lummus, Miami, Fla., George N. Hibben, of Hibben, Noyes & Bicknell, Chicago, Ill., and Francis D. Thomas, Jr., of Bacon & Thomas, Washington, D. C., for plaintiff.

Melvin T. Boyd, of Blackwell, Walker & Gray, Miami, Fla., and W. P. Churchill and Charles B. Smith, of Fish, Richardson & Neave, New York City, for defendant.

MEHRTENS, District Judge.

This cause having come on for trial before the Court, sitting without a jury, on November 22 and 23, 1965, during which witnesses were heard, exhibits and depositions were received in evidence and considered, and briefs of both parties having been submitted and considered, the Court hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. John M. Sisko, plaintiff, is a resident of the State of Florida and his address is 6463 Manor Lane, South Miami, Florida. Southern Resin & Fiberglass Corporation, defendant, is a Florida corporation. There is no dispute as to jurisdiction or venue.

2. The complaint charges defendant with infringement of Sisko patent 3,139,-371 which issued to plaintiff June 30, 1964 on an application filed by plaintiff May 24, 1963. Patent 3,139,371 (hereinafter referred to as the Sisko patent) has been owned by plaintiff since the issuance thereof. Defendant has denied infringement and alleges the patent in suit to be invalid on various grounds. Defendant has also counterclaimed for a declaratory judgment of invalidity and non-infringement on the same grounds.

3. The Sisko patent is a narrow improvement patent in the field of core materials and relates to blocks of wood or the like laid side-by-side and end-to-end and held together by an open mesh flexible and stretchable fabric glued to the blocks. The product of the Sisko patent is designed primarily for use as a reinforcement layer in making small plastic

boats, but the patent makes it clear that the product can be used for other purposes.

The patent mentions blocks made of balsa wood, styrofoam and other plastics (column 1, lines 57–60), but it is clear from this portion of the patent and a statement at column 3, lines 37 to 41, that the blocks may be formed of any other material.

As to dimensions, the patent says (column 1, lines 62–63) they "may vary in accordance with the intended use of the finished product," and (column 3, lines 37–41) may be changed from those described by way of example. Plaintiff's witness Pfuntner admitted that the blocks could be square or rectangular. (Tr. 65)

4. The Sisko patent has six claims.

Claim 1 of the Sisko patent defines a product called a "construction material" made up of three elements:

(1) a number of "core blocks" arranged side to side and end to end to form a core sheet,

(2) a sheet of "flexible and stretchable material" having distributed openings and covering one face of the core blocks, and

(3) "connecting means" securing the sheet of flexible material to the blocks at points spaced inwardly from the edges of the blocks.

Claim 2 adds to claim 1 the statement that the "connecting means" is a "spot adhesive."

Claim 3 adds to claim 1 the limitation that the flexible material is a nylon hexagonal mesh.

Claim 4 adds to claim 1 the statement that the core blocks are balsa wood blocks about 3″ long and 3″ wide.

Claims 5 and 6 incorporate the core of claim 1 in a plastic hull in the manner commonly done in the prior art.

5. The file wrapper (Defendant's Exhibit 6) of the Sisko patent shows that the claims of the Sisko application were repeatedly rejected by the Patent Office Examiner. (Defendant's Exhibit 6, pp.

16–17, 33–34) In order to obtain the allowance of the claims, all of the claims were limited to two features said to be "critical." These features, which appear in all of the claims of the Sisko patent, are:

(a) the use of a stretchable backing material, and

(b) connection of the backing material to the individual core blocks at points spaced inwardly with respect to the side edges of the blocks.

By introducing these limitations, plaintiff voluntarily abandoned coverage of all products that do not have these "critical distinctions" over the prior art. Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 86 L. Ed. 736 (1942); I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 443–444, 47 S.Ct. 136, 71 L.Ed. 335 (1926).

In the amendment of May 8, 1964 plaintiff told the Patent Office (Defendant's Exhibit 6, page 38):

"Two critical distinctions applicant has pointed out involve the use of porous, stretchable material, on the one hand, and the use of connecting means spaced inwardly from the side edges of the blocks, on the other hand. Both of these go directly to the purpose for which applicant's device is intended, and without these features the device would not be suitable for this purpose."

On the basis of these limitations voluntarily placed in the claims and plaintiff's representations, the Patent Office allowed the claims.

Infringement exists only when the accused device and the teachings of the patent in suit are substantially identical in structure, mode of operation, and results accomplished. Stewart-Warner Corp. v. Lone Star Gas Co. (5 Cir. 1952), 195 F.2d 645. Patents on simple combinations are difficult to obtain. If sustained, they are confined strictly to the particular combination claimed. Such patents are not easily infringed for while in principle the doctrine of equivalence

is applicable to them, it is only when most narrowly circumscribed. Hughes v. Magnolia Petroleum Co. (5 Cir. 1937), 88 F. 2d 817.

6. Defendant is a distributor of and has sold the accused product, Contourkore. This product has been made in two forms:

(a) The Contourkore product made prior to September, 1964 and sold by defendant was of the type shown in Plaintiff's Exhibit 2.

(b) The Contourkore product made after September, 1964 and sold by defendant was of the type shown in Plaintiff's Exhibit 1.

7. The Contourkore product exemplified by Plaintiff's Exhibit 2 was composed of a layer of balsa wood blocks held together by a fiberglass fabric spot glued to one surface of the blocks. The Contourkore material exemplified by Plaintiff's Exhibit 1 is composed of a layer of balsa wood blocks held together by a fiberglass fabric secured to the balsa blocks by glue lines extending completely across the face of the blocks. The Contourkore material of Plaintiff's Exhibit 1 additionally uses a special acrylic glue that dissolves in the polyester resin employed in a plastic boat construction within a few minutes of being sprayed with the polyester resin (Tr. 328–329).

8. Neither Contourkore product was a copy of the product of plaintiff's patent. Both distinguished from that product and from the patent claims in a vital particular: the Contourkore products (Plaintiff's Exhibits 1 and 2) both used fiberglass fabric for the backing. This fiberglass fabric is not "stretchable" as that term is used in the claims of the Sisko patent. The vital difference between plaintiff's product and defendant's product is especially emphasized when considered in the light of plaintiff's repeated admissions (Tr. 404–5, DX7, pp. .65, 73–4) that his own trials and experiments with fiberglass had been miserable failures.

The Sisko patent (col. 2, lines 1–4), says its nylon mesh is "capable of stretching in any direction," and provides "for a high degree of stretching." Also the patent (col. 2, line 70 to col. 3, line 2) says it is the "stretching characteristics of the mesh" and the spot gluing that enable the core blocks to "float" into proper position. Sisko admitted that spot gluing and a stretchable fabric in combination were essential (Sisko deposition; Defendant's Exhibit 7, pp. 83–85).

Plaintiff's witness, Pfuntner, admitted that glass fibers *per se* were not stretchable (Tr. 90), and that the fiberglass mesh was not stretchable in an up-and-down or sideways direction. Pfuntner did say that when the mesh was pulled on the bias, it was stretchable, but this is not what the Sisko patent means by stretchable. Pulling the fabric on the bias does not occur during normal application of Contourkore to a curved plastic shell (Tr. 332).

9. The Contourkore product, as made since September 1964 (Plaintiff's Exhibit 1), has the fiberglass fabric secured to the balsa blocks by glue lines extending completely across the faces of the blocks from edge to edge. These glue lines are not "spaced inwardly with respect to the side edges" of the blocks as required by all of the claims of the Sisko patent. This inward spacing requirement was one of the two "critical distinctions" pointed out to the Patent Office during the prosecution of the Sisko patent application (Defendant's Exhibit 6, p. 38), and cannot now be ignored in interpreting the claims of the Sisko patent.

10. During the period January through April 1962, more than one year prior to the Sisko patent filing date of May 24, 1963, plaintiff sold to Bertram Yacht Company in Miami balsa core materials comprising a plurality of balsa core blocks arranged in side-to-side, end-to-end coplanar relation, a sheet of flexible and stretchable material covering one face only of the core sheet and being provided throughout its entire extent with a plurality of uniformly distributed openings therethrough, and connecting means

(glue) attaching the sheet of flexible material to the adjacent surface of the individual core blocks at points spaced inwardly with respect to the side edges of the adjacent block surfaces, the other surfaces of the core blocks remaining unconnected (Tr. 280–284). This is the product of the Sisko patent.

11. The Bertram purchase orders and plaintiff's invoices (Defendant's Exhibits 8 and 9 and 11 to 20) are admitted to be authentic and accurate and show sales of balsa core materials by plaintiff to Bertram prior to May 24, 1962.

Sisko had difficulty in remembering the construction of the balsa core materials he sold to Bertram in the first four months of 1962, but the testimony of Walters at the trial is conclusive. Walters was a friend of plaintiff (Tr. 253) and was Chief Plastics Design Engineer for Bertram Yacht Company during 1962 (Tr. 254–255) and prior to his deposition had given an affidavit on behalf of plaintiff in support of plaintiff's motion for a preliminary injunction in this case.

It is clear from Walters' testimony, and the Court finds, that at least some of the products sold and delivered by plaintiff to Bertram in the first four months of 1962 were identical to or so nearly like the product claimed in claims 1–4 of the Sisko patent that any differences were immaterial.

It is also clear from Walters' testimony, and the Court finds, that at least some of the cores which Sisko sold to Bertram prior to May 24, 1962 and which were the same or substantially the same as the product of the Sisko patent were incorporated by Bertram in boats which it was then building (Tr. 284, 287). Thus, Walters admitted that plaintiff's Balcor material, the product of the Sisko patent, was installed in boats by Bertram before May 24, 1962 (Tr. 300).

12. Sisko's testimony at the trial neither contradicted nor explained Walters' plain testimony that Bertram, prior to May 24, 1962, had purchased from plaintiff a substantial number of products, like those of the patent in all material respects, and had used these products in making boats prior to May 24, 1962.

13. These sales were not for an experimental use but were commercial sales primarily for profit and the product was "in public use or on sale in this country more than one year prior to the date of the application for patent" within the purview of 35 U.S.C. § 102(b).

A single sale of the patented product for profit is sufficient to invalidate the patent in suit, if it was prior to May 24, 1962. Consolidated Fruit-Jar Co. v. Wright, 94 U.S. 92, 94, 24 L.Ed. 68 (1876); Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 20, 59 S.Ct. 675, 83 L.Ed. 1071 (1939). The law on this question is discussed thoroughly in the recent case of Piet v. United States, 176 F.Supp. 576, 581–584 (S.D.Cal.1959), affirmed specifically on this point, 283 F. 2d 693 (9 Cir. 1960), and also in the even more recent case of Webber v. Guiberson Corporation, 231 F.Supp. 596, 600 (D.C. S.D.Tex.1963), aff'd, 336 F.2d 461 (5 Cir. 1964), cert. denied, 379 U.S. 989, 85 S.Ct. 701, 13 L.Ed.2d 610 (1964).

14. Sisko did not originate the idea of using blocks of balsa wood as a core material in making laminated plastic boats. Nor did he originate the idea of assembling such balsa wood blocks in side-to-side and end-to-end relation, held together by a piece of fabric glued to one surface of them for this end use. This is clear from the testimony of Pfuntner (Tr. 367–371), Lippay (Tr. 311–318), and Defendant's Exhibit 4.

15. Long prior to May 24, 1962, plastic boats had been made with balsa wood as a core material. The Edwards Boat Company of Lumberton, North Carolina, and Nor-Tex Manufacturing Co. of Dennison, Texas, in 1959 and 1960 employed balsa wood core strips or slats laid out in a layer or carpet of the desired contour, and held in place by mesh material glued to one surface of the balsa wood with a polyester resin. The balsa slats or blocks were made sufficiently short to conform to the desired contour (Tr. 191–192, 195, 205–207, 214–224, 311–318). Defendant's Exhibit 4 describes

**802**

this process, and Defendant's witness Lippay testified that he had observed it in operation in the North Carolina area in the period 1959–1960 (Tr. 312–313). Plaintiff's witness Pfuntner admitted that this process was one of the early methods with which he was familiar (Tr. 98–99).

16. Cunninghame patent 972,754 describes a series of small square units or blocks, which may be made of wood (p. 1, lines 75–77), glued to a backing sheet of thin pliable material such as cloth (page 2, lines 41–50). The blocks are glued to the backing so that they are entirely independent of each other, can be flexed in any direction and can be applied "to any curvilinear surface" (page 2, lines 69–84). This patent describes the same combination of the same three elements capable of performing the same function as the products set forth in claims 1 to 4 of the Sisko patent.

17. Although the Cunninghame patent does not refer to boat hulls as specified in claims 5 and 6 of the Sisko patent, these claims do nothing more than set the core material of claim 1 in an old context, and hence add nothing patentable to claim 1.

18. Ams patent 476,354 describes a material for use as a facing for ceilings, floors, wainscoting, partitions, etc. This facing consists of a layer of tiles placed side by side on an open mesh flexible backing sheet, such as a wire netting, to which the tiles are individually fastened by a cement of some kind. The cement is applied in a series of separated rows set back from the edges of the tiles. Ams teaches that "In this way the netting is exposed between the joints which * * * permits the facing to be readily rolled up * * *." (Col. 1, lines 47–52.)

The Sisko patent, claim 1, does not exclude tiles by calling for a plurality of core blocks, and the backing sheet of the Ams patent is described as flexible. The wire netting of Ams is more "stretchable" than the fiberglass mesh of the accused product. (Tr. 322). Hence, if the fiberglass of Southern

Resin's accused Contourkore product is "stretchable" for purposes of infringement, then the wire mesh of the prior art Ams patent is "stretchable" in the same sense for purposes of invalidating Sisko's claims. It is axiomatic in the patent law that "that which infringes if later anticipates if earlier," Toch v. Zibell Damp Resisting Paint Co., 233 F. 993, 994 (2 Cir. 1916). The connecting means (cement) of the Ams patent is applied in the manner called for by claim 1, and for the same purpose, to enable the product to be rolled up. The product patented by Sisko in his claim 1 is the same product as described by Ams, regardless of the use to which it may be put by purchasers of the product.

19. At most, the differences between the product defined in claims 1 to 4 of the patent in suit and the acknowledged prior art practice in using balsa wood as core material comes down to structural details, such as the use of nylon mesh instead of a cotton scrim cloth, and the use of spot gluing. Merely because something is new and useful is not a sufficient reason for saying that it is patentable. This has been true for more than a hundred years, Hotchkiss et al. v. Greenwood et al., 11 How. [52 U. S.] 248, 266, 13 L.Ed. 683 (1850). This has been uniform law over the years, Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945) and is true today. Stabler v. Bright Leaf Industries, Inc., 261 F.2d 383, 385 (5 Cir. 1958); Spray-Bilt, Inc. v. Ingersoll-Rand World Trade, Limited, 350 F.2d 99, 103 (5 Cir. 1965).

20. As the shape of hulls of plastic boats changed over the years, it was perfectly normal for any skilled mechanic to find ways of binding blocks of balsa wood together to make them more and more flexible. While the patent does not teach this, it is perfectly obvious to anyone that the most important single factor in making a balsa wood block carpet that will readily conform to a compound curvature is to make the blocks small enough in size. The smaller they are, the more readily they will conform.

21. It is a principle of patent law that patents on combinations of old elements must be scrutinized especially carefully as to their ability to perform some new and very unusual and surprising function, Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 150–153, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Aircraftsmen, Inc. v. Aircraft Equipment Co., 247 F.Supp. 469; 147 U.S.P.Q. 267, 270 (S.D.Fla., Oct. 29, 1965).

22. Plaintiff, at the trial, alleged that the Sisko patent produced a new result or function—"drapability"—that is, it would conform to compound curved surfaces. But there was nothing new or surprising about this result or function. All that was required to give "drapability" was to make the blocks small enough individually, and to attach them to the fabric backing so that they had some freedom of motion relative to each other. The products of the Ams and Cunninghame patents had "drapability."

23. The prior art, including the Cunninghame and Ams patents and the prior practices of boat builders in using balsa core materials, were not before, or considered by, the Patent Office at the time they allowed the Sisko patent in suit, and are all much more pertinent than any of the prior art cited by the Patent Office during the prosecution of the Sisko patent. The claims of the Sisko patent fail to define any feature or structure that differs in any substantial or material respects from the products described in the Cunninghame and Ams patents, or from the balsa core materials used commercially in the prior art.

24. The minor differences which exist between the subject matter of the claims of the Sisko patent and the prior art are such that the subject matter as a whole would have been obvious, at the time the alleged invention was made, to a person having ordinary skill in the art to which said subject matter pertains.

CONCLUSIONS OF LAW

I. The Court has jurisdiction of the parties and over the subject matter of this action and defendant's counterclaim (28 U.S.C. § 1338(a), § 2201).

II. The Sisko patent No. 3,139,371 issued to plaintiff on June 30, 1964, and has been owned by plaintiff continuously since that date.

III. The Sisko patent is entitled to no presumption of validity over the prior art relied on by defendant, which was not cited or considered by the Patent Office.

IV. Claims 1 to 6, inclusive, of the Sisko patent are each invalid and void for lack of any patentable novelty over:

(a) Cunninghame patent 972,754

(b) Ams patent 476,354, and

(c) Certain prior practices of boat manufacturers in using balsa core materials in the manufacture of plastic boats.

V. Claims 1 and 2 of the Sisko patent are each invalid and void, as being anticipated by:

(a) Cunninghame patent 972,754, and

(b) Ams patent 476,354.

VI. Claims 1 to 6, inclusive, of the Sisko patent are each invalid and void by reason of plaintiff's sale, more than one year before the filing date of the patent, of balsa core materials identical or substantially identical to the product claimed in claims 1 to 4, inclusive, of the Sisko patent, and the incorporation of such products, as specified by claims 5 and 6, into plastic boats, by plaintiff's customer, the Bertram Yacht Company, prior to May 24, 1962.

VII. Claims 1 to 6, inclusive, of the Sisko patent are each invalid and void for lack of any patentable invention over the prior art, because they define merely an obvious combination of components that were individually old and well-known for this purpose. The combination of these old elements produced no new or unexpected results, and would have been obvious to one skilled in the art at the time the alleged invention was made.

VIII. During the Patent Office prosecution of the Sisko patent application, each of the claims was limited to a "stretchable" backing material, and to connection of the backing material to the blocks at points spaced inwardly with respect to the side edges of the blocks. These limitations were placed in the claims in order to induce the Patent Office to allow the claims. Plaintiff cannot now recapture what he voluntarily gave up in the Patent Office, in order to induce the Examiner to allow his patent. As the accused product sold by the defendant does not incorporate a "stretchable" backing, and the product now sold by defendant additionally does not incorporate a connection of the backing material spaced inwardly from the side edges of the blocks, defendant has not infringed any of the claims of the Sisko patent.

IX. The defendant, Southern Resin & Fiberglass Corporation, is entitled to judgment against the plaintiff, John M. Sisko, dismissing the complaint with prejudice, and adjudging claims 1 to 6, inclusive, of Sisko patent 3,139,371 invalid and not infringed, and with taxable costs to defendant.

### JUDGMENT

In accordance with the foregoing Findings of Fact and Conclusions of Law, it is hereby

Ordered, adjudged and decreed that

(1) Claims 1 to 6, inclusive, of United States Letters Patent No. 3,139,371 are, and each of them is, invalid and void in law.

(2) Claims 1 to 6, inclusive, of United States Letters Patent No. 3,139,371 have not been infringed by defendant.

(3) Plaintiff's complaint for infringement of said Letters Patent is hereby dismissed with prejudice, and plaintiff shall take nothing by his complaint.

(4) Defendant, Southern Resin & Fiberglass Corporation, shall have and recover from plaintiff, John M. Sisko, the taxable costs in this court.